345 F.2d 681
 MINNESOTA MINING AND MANUFACTURING COMPANY, a Delaware corporation, Petitioner,
v.
Hon. Casper PLATT, Chief Judge, United States District Court, Eastern District of Illinois, Respondent.
 No. 14725.
 United States Court of Appeals Seventh Circuit.
 April 20, 1965.
 
 John T. Chadwell, Chicago, Ill., Robert Z. Hickman, Danville, Ill., John L. Connolly, St. Paul, Minn., Glenn W. McGee, Chicago, Ill., Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., of counsel, for petitioner.
 Raymond P. Hernacki, Chicago, Ill., George R. Kucik, Cheverly, Md., William H. Orrick, Jr., Asst. Atty. Gen., Robert B. Hummel, Attorney, Department of Justice, Washington, D. C., for respondent.
 Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 We now consider a second petition for mandamus filed in this court by Minnesota Mining and Manufacturing Company, a Delaware corporation, for the issuance of a writ of mandamus directed to Chief Judge Casper Platt of the United States District Court for the Eastern District of Illinois, respondent, ordering him to vacate his order of June 30, 1964 which again denied petitioner's motion to transfer the criminal action pending before him entitled United States v. Minnesota Mining and Manufacturing Company, No. 61-73-D, and ordering him to transfer said cause to the district court for the District of Minnesota, or, in the alternative, directing him either to comply with the mandate of this court or to reconsider the motion in the light of proper criteria of the "interest of justice" under Criminal Rule 21(b).[1]
 
 
 2
 Following a review of our prior decision, 314 F.2d 369 (1963), the Supreme Court, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), noted that the government had not challenged our striking of a finding by the district court that it "would be more difficult to get a fair and impartial jury in the Minnesota District than in the Eastern District of Illinois." The Supreme Court noted that Judge Platt represented in his answer that this issue "was but one of a number of factors". It added, at 245, 84 S.Ct. at 772, that it was our function "to determine the appropriate criteria and then leave their application to the trial judge on remand," and that extraordinary writs are "`to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' Roche v. Evaporated Milk Assn., 319 U.S. 21, 26 [63 S.Ct. 938, 941, 87 L.Ed. 1185] (1943)." (Italics supplied for emphasis.)
 
 
 3
 The court said that the fact that Minnesota is the main office of petitioner may be considered with reference to such factors as the convenience of records, officers, personnel and counsel. Therefore, it becomes important that we ascertain whether on remand, the district court gave consideration to such factors and whether, in so doing, it exercised its authority lawfully or abused it. In so doing, we make no findings of facts and make no factual reference except where there is substantial evidence of some fact material to the performance of our functions and the purpose of a writ of mandamus.
 
 
 4
 The original record, which essentially remained unchanged at the remand hearing, showed and now shows no witnesses on the merits are in the Eastern District of Illinois, no connection (except statutory venue) between that district and the issues created by the indictment, and no significant saving in cost or any other elimination of hardship or augmentation of convenience that could result to anyone from trying the case in Danville. The record as now supplemented shows that of 99 potential government witnesses, none of them lives in the Eastern District of Illinois. Current train and plane schedules again demonstrate the vastly superior accessibility, and therefore convenience, of the Twin Cities of Minnesota, as compared to Danville, for all witnesses. Docket conditions in both districts continue to be current, with the Eastern District of Illinois having a larger average case load per judgeship than does the Minnesota district.[2]
 
 
 5
 A more complete recital of the foregoing and other relevant facts is appended in footnote.[3]
 
 
 6
 Neither at the original hearing in the district court, nor upon remand, did the government offer any evidence to refute the foregoing facts. Government counsel took the position that the disruption of business, the inconvenience that would accrue to petitioner through a trial at Danville, and its expense should not be considered by the court because of the size of petitioner. The government actually filed a brief in the district court arguing that respondent should "consider the size of defendant * * * in deciding the motion to transfer". In its brief to the district court the government asserted:
 
 
 7
 "Since the defendant has created the issue concerning the impact of the additional expense of trial in Danville, and since this Court accepted said issue, and the Supreme Court has also accepted it for purposes of this case, it is rather late in the day for this defendant to now claim that your Honor must disregard its size and its income and pretend that this defendant is in the same position as an individual defendant. * * *"
 
 
 8
 The government also submitted that the court
 
 
 9
 "* * * should consider the great size and financial strength of defendant Minnesota Mining and Manufacturing Company in evaluating the impact of any added expense resulting from trial in Danville."
 
 
 10
 We find no basis for adding the size of petitioner to the criteria which were clearly approved by the Supreme Court when it remanded this case. We recognize that there are cases holding that financial weakness of a defendant in a case brought in a jurisdiction other than its home location justifies a transfer to the home district, as admitted by government counsel herein. However, we cannot agree that it is conversely true (as government counsel successfully argued before Judge Platt) that the financial strength of a defendant in such a case is a reason for rejecting its argument that proof of substantial added expense calls for transfer.
 
 
 11
 The burden of the government's argument is that petitioner is a "giant corporation" and, regardless of how a trial on the merits might end following a large expenditure by petitioner in its defense, it must still foot the bill.[4] Thus, even if petitioner should win a verdict and a judgment on a trial at Danville, it would be penalized the additional costs (assumed by the government to be $100,000), most of which it would have no right to recover. This strange outcome would be justified by government counsel solely upon the theory that the "situation is different".
 
 
 12
 On remand, Judge Platt's treatment of this situation was limited to the expression of an equivocal opinion that "interruption of the business and expense of defendant have been overemphasized". This language indicates something less than a fair consideration of salient parts of petitioner's case on remand. We feel, however, that these were important criteria and it was the judge's duty to consider them. He could not ignore or insufficiently weigh or consider them even if he thought they were over-emphasized.
 
 
 13
 We feel it proper to add that, in the consideration of this case, the element of size, if permissible as applied to petitioner, should also have been considered as to its adversary, the government, with its well-known overwhelmingly superior size. We really have here a David and Goliath contest. "David" maintains that it has proved by proper criteria, that, in the interest of justice, the case should be transferred to Minnesota. "Goliath" seeks to prevent that transfer. We believe that the size and power of neither of the parties is relevant in this matter.
 
 
 14
 As to the docket conditions in Minnesota and the Eastern District of Illinois, on remand the district court did not disagree in any way with our statement in footnote 3 of our prior opinion (314 F.2d 369, 375) that "* * * a division of the cases pending in the Eastern District of Illinois between the two judges of that district would reveal a considerable case load for both of them." Instead he considered a certificate by the clerk of his court which however was limited to cases pending in Danville to the exclusion of those pending in other parts of the same district. Of significance in this case is the condition of the docket in the Eastern District of Illinois as compared with the District of Minnesota — not the condition of the docket in only a part of the Eastern District of Illinois, i. e. Danville, as compared with the District of Minnesota. Judge Platt refused to recognize this condition.
 
 
 15
 Judge Platt, in his answer to the rule to show cause filed herein, has submitted a brief the last argument of which sums up his position "that the appropriate disposition of the matter was charted by Judge Finnegan * * * in dissent" in Chicago R. I. & P. R. R. v. Igoe (1955), 220 F.2d 299, in which the Supreme Court denied certiorari, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735. Obviously the dissenting opinion was not correct.
 
 
 16
 We now hold that Judge Platt, on remand, instead of exercising his prescribed jurisdiction and authority, pursuant to the criteria determined by this court and authorized by the Supreme Court, abused his discretion as pointed out in this opinion and that therefore he did not comply with the mandate of this court upon remand. He did not reconsider the motion of petitioner to transfer in the light of proper criteria and the interest of justice under federal criminal rule 21(b).
 
 
 17
 In his brief before us, respondent squarely takes the position that mandamus cannot be used to control his decision on a rule 21(b) motion, as asked by petitioner, although he assumes the validity of the extraordinary writ of mandamus as an appropriate means of reviewing his decision on a transfer motion under said rule. He argues that he had discretion in passing on the transfer motion. This he did have. However, this court has the right to determine whether he abused that discretion. This case is one in which the correction of that abuse would serve to give effect to rule 21(b) and is particularly appropriate for the exercise of mandamus. In La Buy v. Howes Leather Co., 352 U.S. 249, 256, 77 S.Ct. 309, 313, 111 L.Ed.2d 290, Justice Clark said:
 
 
 18
 "* * * As this Court pointed out in Los Angeles Brush Corp. v. James, 272 U.S. 701, 706 [47 S.Ct. 286, 288, 71 L.Ed. 481] (1927): `* * * [W]here the subject concerns the enforcement of the * * [r]ules which by law it is the duty of this court to formulate and put in force,' mandamus should issue to prevent such action thereunder so palpably improper as to place it beyond the scope of the rule invoked. As was said there at page 707 [at page 289 of 47 S.Ct.], were the Court `* * * to find that the rules have been practically nullified by a District Judge * * * it would not hesitate to restrain [him] * * *.'" (Italics supplied.)
 
 
 19
 and at 257, 77 S.Ct. at 314, the court added:
 
 
 20
 "It is also contended that the Seventh Circuit has erroneously construed the All Writs Act as `conferring on it a "roving commission" to supervise interlocutory orders of the District Courts in advance of final decision.' Our examination of its opinions in this regard leads us to the conclusion that the Court of Appeals has exercised commendable self-restraint. * * *"
 
 
 21
 A writ of mandamus will issue directing respondent (1) to vacate and set aside the order entered by him on June 30, 1964 in case 61-73-D, entitled United States v. Minnesota Mining and Manufacturing Company, and (2) enter an order transferring said cause to the United States District Court for the District of Minnesota. Chicago R. I. & P. R. R. v. Igoe, 220 F.2d 299 (1955).
 
 Writ of mandamus to issue
 
 
 Notes:
 
 
 [1]
 18 U.S.C.A. rule 21(b) provides:
 "(b) Offense Committed in Two or More Districts or Divisions. The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."
 
 
 [2]
 And see third paragraph of note 3, 314 F.2d 369, 375
 
 
 [3]
 Location of parties and records. Petitioner's operations are centered in St. Paul, Minnesota. Its general and administrative offices, its main research laboratories, and several of its manufacturing plants are located there. Petitioner has no facilities, not even a branch sales office, in the Eastern District of Illinois. All but two of petitioner's 11 directors and 29 corporate officers live in or near St. Paul, Minnesota; none lives in the Eastern District of Illinois. Five present or former employees of the petitioner who have been interviewed by government counsel since the return of the indictment also live in St. Paul. Trial counsel on both sides are in Chicago, but petitioner's general counsel and patent counsel, who have served for many years (from 1937 and 1929 respectively), are located in St. Paul. Besides its copies of the 15,000 documents already furnished the government, general corporate files (4,000 file drawers), its operating division files (over 300 drawers), and its patent attorneys' files (84 drawers) are all located in St. Paul. Some of the files used in the normal course of business and the personnel in charge of the files would have to be moved to Danville. Eleven alleged co-conspirator corporations are located on the East Coast or in the Chicago area; of the 29 present or former employees of these eleven companies who have testified before the grand jury or been interviewed by the government counsel in Chicago, 17 are from the East Coast, 5 from Florida or the West Coast, and 7 from the Chicago area, but not one lives in the Eastern District of Illinois.
 Events in issue. Respondent has characterized the indictment as charging "in the main * * * improper use of [petitioner's] patents in coercing competitors to accept patent license agreements * * *." No patent licensee, alleged co-conspirator, or direct competitor is, however, located within the Eastern District of Illinois. Petitioner's executives in charge of the products, patents, patent licenses and negotiations involved in the indictment know of no event relating to these matters which took place, and no prospective witness who lives, in the Eastern District of Illinois. Such events have, on the other hand, taken place in St. Paul on many occasions, and decisions concerning such matters have been made in St. Paul.
 Contact between defense counsel and petitioner's executives; disruption of business. In order adequately to defend against the charges of this indictment, the record shows, it is essential that some of petitioner's principal executives living and working in the Twin Cities area be present at the place of trial throughout the time of final preparation for and actual trial of this case, both because of their knowledge of the product lines and of the patent licenses involved in the indictment and because many of them will be important defense witnesses. Similarly, the presence of subordinates who have had responsibility in the areas covered by the indictment and who also live in or near St. Paul will be necessary at the trial. General and patent counsel from St. Paul will have to be present before and during the trial, and contact between corporate executives and all counsel will be easier, less expensive, less disruptive of petitioner's business, and more apt to assure defendant adequate representation if the trial is held in St. Paul. Moreover, the removal of personnel and records to Danville necessary to an adequate defense would cause serious disruption of the petitioner's normal business activities at all levels. The respondent specifically found that "there can be little doubt that if the trial occurred in St. Paul there would be less disruption of petitioner's business * * * [and that] * * * during the trial * * * counsel could talk in person with petitioner's officers and employees if the trial were held in St. Paul."
 Unjustifiable expense. The cost to petitioner of trial in Danville instead of St. Paul, as shown in a detailed estimate submitted by affidavit of petitioner's Danville counsel, will exceed $100,000. This estimate is minimal, has never been chalenged, and does not include what would of necessity be very substantial expenses that would have to be incurred for transportation, facilities for witnesses, office space for executives and compensation of local counsel. Nor does it take into account the intangible expenses resulting from having executives removed from their normal operating posts, losses of time, reduction in supervision and efficiency, morale and other such factors.
 Convenience of witnesses. Petitioner's affidavits show the locations of all prospective witnesses presently known to it, both of its own witnesses and those who, because they testified before the grand jury or have since been interviewed by the government, are likely to be witnesses for the government at the trial of this cause. The trial judge found that Minnesota would be the "more convenient" forum for witnesses who are officers or employees of the petitioner, most of whom live in the Twin Cities area and none of whom lives in or near the Eastern District of Illinois. As to prospective government witnesses, the government has introduced no facts, but no claim is made that any witness on the merits is to be found in the Eastern District of Illinois. The record shows, in fact, the areas in which 99 prospective government witnesses, grand jury witnesses or persons interviewed by government counsel, are domiciled. Fifteen of the 99 reside in the Twin Cities area to which petitioner seeks to have this case transferred. Of the remaining 84, 24 are to be found in the metropolitan New York and New Jersey areas, 12 in upstate New York and New England states, 9 in the Pennsylvania and Ohio region, 14 in metropolitan Chicago, 11 in Florida and mid-south states, 8 in California and other far western states, 1 in Detroit, and 5 in Missouri or Kansas. Not one is in the Eastern District of Illinois.
 No direct commercial transportation exists either by air or rail between the Twin Cities area and Danville. Nor is there any direct commercial transportation between Danville and most of the areas where the potential government witnesses are known to be located, such as the East and West Coasts, Florida, etc. Because Chicago is the focal point for all the major air lines, the only practical route to Danville from most parts of the country is through Chicago. Direct flights to St. Paul are available from many parts of the country, but flights to St. Paul are often also routed through Chicago. The record shows that it is much more convenient and expedient to reach the Twin Cities from Chicago than it is to reach Danville.
 As a major metropolitan area of the United States, the Twin Cities are served by seven airlines scheduling more than 100 flights daily in the Minneapolis-St. Paul International Airport. There are 34 flights daily between Chicago and St. Paul and 19 flights daily between New York and St. Paul. Flights to and from St. Paul are available throughout the day and night. Danville, on the other hand, is served only by Lake Central which schedules a total of seven flights into Danville per day, four of them from Chicago and none of them from the Twin Cities or from any point farther east than Terre Haute, Indiana. The earliest flight from Chicago in the morning is at 10:05 a.m., getting to Danville at 11:05; the latest flight leaving Danville is at 4:10 p.m.
 The railway situation is comparable. There are eight trains operating daily between Chicago and St. Paul leaving and arriving at regular intervals through the day and evening. Only three trains from Chicago stop in Danville, none of them before 1:00 p.m. Of the three trains leaving from Danville to Chicago, two would be extremely inconvenient as they leave in the middle of the night or early in the morning; the other leaves at five o'clock which might prove difficult for anyone having to stay to the end of the trial day. Overall, the schedules are such that a witness or other interested person leaving Chicago by plane at 8:00 a.m. can arrive in St. Paul at 9:05 a.m., in time to attend a morning court session; whereas, whether he chose to travel by plane or train, he would have to leave Chicago the night before in order to be in Danville in time for the opening of court the next morning.
 Docket conditions. The dockets of the District Court of Minnesota are current now, as they were at the time of the original decision on transfer. As of April 30, 1964, the average case load per judge in Minnesota was 190.25 cases as compared with 213 in the Eastern District of Illinois.
 The certificate filed by respondent reveals that the federal district judges not regularly sitting in the Eastern District of Illinois have been sitting there by special assignment and states that with their help the docket in Danville is current, but no reference is made to the East St. Louis docket, a part of the Eastern District where another judge presides.
 
 
 [4]
 Government counsel informed Judge Platt:
 "* * * It may cost $100,000 more to try the case in Danville than at St. Paul for this company, but if that $100,000 expense is one which is to be absorbed by a small corporation it may be a tremendous hardship, sufficiently so to warrant this court's deciding that it would be not in the interests of justice to require it. On the other hand, in Minnesota Mining I suggest the situation is different. * * *"
 HASTINGS, Chief Judge (dissenting).
 With due deference, I feel compelled to again dissent in this case from the action taken by my two distinguished colleagues on this court.
 This case was first before us on a petition for writ of mandamus directed to Chief Judge Casper Platt of the United States District Court for the Eastern District of Illinois. The writ was ordered issued by a divided court on February 27, 1963, as reported in 314 F.2d 369.
 In my dissent to that decision, I agreed with the majority that the district court, in passing on petitioner's motion to transfer the case to the District of Minnesota, under Rule 21(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., should not consider whether "it would be more difficult to get a fair and impartial jury in the Minnesota District than in the Eastern District of Illinois."
 Otherwise, I felt the majority erred in the other aspects of its decision.
 The Supreme Court, by unanimous vote, reversed and remanded the cause to our court "with instructions to vacate the judgment of the District Court and to remand the case for reconsideration of the motion for transfer, without reference to the ability of the United States to receive a fair and impartial trial in Minnesota." Platt v. Minnesota Mining Co., 376 U.S. 240, 246, 84 S.Ct. 769, 772, 11 L.Ed.2d 674 (1964). Mr. Justice Harlan concurred in a separate opinion.
 In reversing our court, the Supreme Court, speaking through Mr. Justice Clark, said:
 "The function of the Court of Appeals in this case was to determine the appropriate criteria and then leave their application to the trial judge on remand. Extraordinary writs are `reserved for really extraordinary causes,' Ex parte Fahey, 332 U.S. 258, 260 [67 S.Ct. 1558, 1559, 91 L.Ed. 2041] (1947), and then only `to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' Roche v. Evaporated Milk Assn., 319 U.S. 21, 26 [63 S.Ct. 938, 941, 87 L.Ed. 1185] (1943). Here, however, the Court of Appeals undertook a de novo examination of the record and itself exercised the discretionary function which the rule commits to the trial judge. This the court should not have done since the writ cannot be used `to actually control the decision of the trial court.' Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 383 [74 S.Ct. 145, 148, 98 L.Ed. 106] (1953)." Id. at 245, 84 S.Ct. at 772.
 The Supreme Court further said:
 "Since the trial court must reconsider the motion, effective judicial administration requires that we comment upon the erroneous holding of the Court of Appeals that criminal defendants have a constitutionally based right to a trial in their home districts. * * * The fact that Minnesota is the main office or `home' of the respondent has no independent significance in determining whether transfer to that district would be `in the interest of justice,' although it may be considered with reference to such factors as the convenience of records, officers, personnel and counsel." Id. at 245-246, 84 S.Ct. at 772.
 The Supreme Court observed that the Government has not "challenged the use of the extraordinary writ of mandamus as an appropriate means to review the refusal to transfer" and for that reason did not consider that question or express any opinion thereon. Id. at 244, 84 S.Ct. at 772.
 Mr. Justice Harlan stated that while the action of the majority in our court reflected a strong view that the transfer should be granted, yet "such action cannot well be regarded as other than a de novo determination of the change of venue motion on the part of the Court of Appeals. Such a course inescapably contravenes accepted principles governing the exercise of appellate jurisdiction." Id. at 246, 84 S.Ct. at 773.
 In due course, the matter was remanded to the district court, as directed by the Supreme Court.
 Judge Platt held a further hearing on the petition to transfer on May 28, 1964 and on June 30, 1964 again denied the transfer to the District of Minnesota, because he "was not satisfied that petitioner had established that the `interest of justice' would be promoted by the requested transfer."
 Minnesota Mining and Manufacturing Company again filed in this court a petition for a writ of mandamus directing the transfer to the District of Minnesota. The same panel of three judges of our court which heard the prior mandamus petition was designated to rehear this second one. A majority voted to issue a Rule to Show Cause directing Judge Platt to answer the petition for writ of mandamus.
 I voted to deny the issuance of the rule and further to dismiss the petition.
 Thereafter, Judge Platt filed his answer to the rule. In the interest of clarity, I have appended Judge Platt's answer as an Appendix to this dissent.
 The matter came on for oral argument before the assigned panel of three judges. Again, I am compelled to dissent from the majority holding that the writ of mandamus will issue directing Judge Platt "(1) to vacate and set aside the order entered by him on June 30, 1964 * * * and (2) enter an order transferring said cause to the United States District Court for the District of Minnesota. * * *"
 I dissent for the following reasons:
 (1) In my judgment, as shown in his answer to the Rule to Show Cause and in his order under review, Judge Platt has fully complied with the decision of the Supreme Court, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674, and with our order on remand. He did not in any sense abuse the discretion vested in him. He did reconsider the motion to transfer in the light of proper criteria.
 (2) I read the majority opinion as being in conflict with the decision of the Supreme Court, in that the majority again, in my judgment, has considered the case de novo and made its own determination of the motion to transfer.
 (3) The "other relevant facts" appended in footnote (3) of the opinion are a verbatim copy of a part of petitioner's brief filed in this appeal (except for record references, substitution of "petitioner" for "defendant," and a few minor deletions), beginning on page 5 and ending on page 10, and except for a portion of the final sentence in the footnote. Thus, the majority opinion not only makes de novo findings but accepts them as found by petitioner in its brief.
 (4) The majority opinion improperly orders the case transferred to the District of Minnesota. In my judgment, we have no authority to enter such an order as an appellate tribunal. If I read the decision of the Supreme Court correctly, it held this was not our function.
 (5) Finally, I think the majority erred in entertaining this petition for an extraordinary writ and issuing a Rule to Show Cause. It appears to me that a second interlocutory review of a discretionary order in this case is unwise and unsound judicial administration. In light of the experience of this court in recent months, I adhere to the view that repetitive invocations of mandamus are improperly becoming a way of appellate life.
 Judge Platt entered his first order denying the requested transfer on August 31, 1962. It now appears that the forum in which this important criminal case will be tried may not even be determined until almost three years after the change was first requested. This is not to speculate on when it may finally come to trial.
 As noted in my prior dissent, 314 F.2d at 378, my Brother Castle expressed somewhat similar views in his dissent in Chesapeake & Ohio Railway Company v. Parsons, 7 Cir., 307 F.2d 924, 926-928 (1962). Certiorari in that case had been granted. Subsequently, this decision was reversed by the Supreme Court. Parsons v. Chesapeake & O. R. Co., 375 U.S. 71, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963), and thereby another mandamus proceeding went awry.
 As Mr. Justice Clark said, supra, "Extraordinary writs are `reserved for really extraordinary causes,' * * * and then only `to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" 376 U.S. at 245, 84 S.Ct. at 772. I do not think this is such an "extraordinary cause." I do think this is a good case in which we might properly limit what I believe to be a misuse of this extraordinary writ.
 I would deny the petition for a writ of mandamus and order it dismissed.
 APPENDIX
 IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT
 No. 14725
 MINNESOTA MINING AND MANUFACTURING COMPANY,
 Petitioner

 v.

 THE HONORABLE CASPER PLATT, CHIEF JUDGE, UNITED
 STATES DISTRICT COURT, EASTERN DISTRICT OF ILLINOIS,
 Respondent.
 On Petition for a Writ of Mandamus
 ANSWER TO THE RULE TO SHOW CAUSE
 I, Casper Platt, Chief Judge of the United States District Court for the Eastern District of Illinois, answer the rule to show cause issued by this Court as follows:
 My order of June 30, 1964, in the case of United States v. Minnesota Mining & Mfg. Co., Criminal Action No. 61-73-D, was made after a hearing held on May 28, 1964, for the purpose of determining whether the case should be transferred to the District of Minnesota upon motion of the defendant (petitioner) under Rule 21(b) of the Federal Rules of Criminal Procedure. After examining all the relevant factors and considering the arguments of counsel, I was not satisfied that petitioner had established that the "interest of justice" would be promoted by the requested transfer and therefore denied petitioner's motion.
 In reaching that result I considered the various opinions on the previous transfer motion in this case, i. e., the opinion of the Supreme Court dated March 9, 1964; the opinion of this Court dated February 27, 1963; and my memorandum opinion and order of August 31, 1962. I also reconsidered the record developed on the previous transfer motion, including the affidavits introduced by both sides. In addition, I considered the supplemental affidavits introduced at the proceeding on the instant transfer motion.
 As ordered by the mandate of this Court dated April 21, 1964, I gave no weight to the ability of the United States to receive a fair and impartial trial in Minnesota.
 The reasons why I denied transfer have already been spelled out in my answer to the previous rule to show cause. I reiterate and reincorporate those reasons into this answer (except for the fair trial point which I ignored in deciding the present motion): I gave consideration to all factors urged by petitioner and found several which militated against transfer. It appeared to me that the trial of the case would be delayed at least a year by the transfer, and the Government avowed a speedy trial was essential because some of the petitioner's competitors are in financial straits owing to petitioner's alleged conduct and to the fact that petitioner has refused to halt its allegedly illegal activities; that the Government's witnesses may be inconvenienced if forced to travel to the northern city of St. Paul, Minnesota; that the Government's documents are already in Danville in the custody of the Clerk of the Court and would have to be transported to St. Paul; and that transfer would increase the Government's expense because its witness fees would be greater, as would the cost of transportation of the Government's staff. It further appeared to me that petitioner has operated on a nationwide scale in its business of licensing and selling in the industries here involved; that there is support for the Government's avowal that petitioner's overt acts have substantially affected the residents of the Eastern District of Illinois; that this is not an "imported" case; and that, considering the evidence and facts in the over-all, trial in the Eastern District of Illinois would be in the "interest of justice."
 While petitioner would suffer some additional inconvenience and hardship, it does not appear to me that its every assertion must be taken at face value, since not all of its executives need be in Danville at one time; communication via long distance telephone will eliminate much travel; the bulk of the documents necessary for the trial relates to events no longer current so their absence from St. Paul will not disrupt everyday business operations; copies of many of the Government's documents are located in the office of petitioner's counsel in Chicago and must be moved in any event; petitioner's private planes can carry its executives and documents from St. Paul to Danville in three hours; Mr. McKnight can obtain adequate medical attention in Danville; and at one time petitioner was willing to assume all such inconvenience and expense in order to have the trial in Chicago.
 Petitioner has not introduced any additional evidence, in its supplemental affidavits, sufficient to satisfy me that the "interest of justice" required transfer. Data as of April 1, 1964 (from the Government's supplemental affidavit of Howard L. Fink), indicates that my criminal docket is still more current than those of the Judges in Minnesota and the case can therefore come to trial earlier in the Eastern District of Illinois.
 For the foregoing reasons and those set forth in the attached brief, I respectfully submit that the petition for a writ of mandamus should be denied and that the rule to show cause should be discharged.
 CASPER PLATT,
 Chief Judge,
 United States District Court,
 Eastern District of Illinois.
September 1964.