**UNITED STATES of America**

v.

**Joseph ALTER and Joel Steiner, Defendants.**

**No. 78 Cr. 907.**

United States District Court, S. D. New York.

Jan. 26, 1979.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for the U. S.; Allen R. Bentley, Asst. U. S. Atty., New York City, of counsel.

William Hundley, Washington, D.C., for defendant Alter.

E. David Rosen, Miami, Fla., for defendant Steiner.

## OPINION

EDWARD WEINFELD, District Judge.

The defendants, Joseph Alter and Joel Steiner, charged in a twenty-one count indictment with mail and wire fraud in a scheme to defraud, move pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure [1] to transfer the case to the Southern District of Florida on the ground that it would serve the convenience of parties and witnesses and would be in the interest of justice. The government does not dispute the Court's power to transfer the action, since venue is proper in the Southern District of Florida, where the alleged crime was also committed.[2] Rather, the government opposes transfer upon the ground that no increase in overall convenience would result from the proposed transfer.

The basic question under the Rule is whether sufficient cause has been shown to satisfy the Court that the proposed transfer is "in the interest of justice," a determination which rests upon the unique facts of each case and is addressed to the Court's discretion.[3] The factors which are relevant in deciding whether the Court's discretion should be exercised are well known and require no elaboration here.[4]

A significant factor is the location of the events likely to be at issue.[5] The substance of the fraudulent conduct and the scheme to defraud set forth in the indictment herein was the basis of a prior civil action instituted in this Court in May 1977 by the Commodity Futures Trading Commission against Alter and Steiner, four other individuals and Crown Colony Commodity Options, Ltd., a corporation through which the alleged fraudulent conduct was carried on and which maintained offices in New York City, Miami and Chicago.[6] The essence of the charges in the civil action, wherein the Commission sought injunctive relief to prevent the defendants from engaging in the alleged fraudulent practices, was that they "actively operated a high-powered 'boiler room,' principally from the Miami office, in attempting to sell, and selling, London commodity futures options to persons throughout the United States, and in so doing engaged in various acts and conduct aimed to cheat, to defraud, or to deceive their customers." [7]

The charges in the instant indictment substantially parallel those in the civil action. It is not disputed that the Miami office of the Crown Colony Commodity Options, Ltd. was the base of operations in conducting nationwide telephone solicitations of potential purchasers. Salesmen who made the initial telephone pitch and follow-up calls to prospective customers were hired and trained in Miami and thereafter conducted their activities from scores of WATS telephone lines maintained at the Miami office. The indictment alleges that

1. Transfer In Other Cases. For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district.

2. Cf. United States v. Cashin, 281 F.2d 669, 673 (2d Cir. 1960).

3. United States v. Garber, 413 F.2d 284 (2d Cir. 1969); United States v. United States Steel Corp., 233 F.Supp. 154, 156 (S.D.N.Y.1966).

4. Platt v. Minnesota Mining & Mfg., 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964); United States v. Projansky, 465 F.2d 123, 139 n. 34 (2d Cir. 1972).

5. United States v. Olen, 183 F.Supp. 212 (S.D.N.Y.), mandamus denied sub nom. United States v. Cashin, 281 F.2d 669 (2d Cir. 1960);

see also United States v. Clark, 360 F.Supp. 936, 945 (S.D.N.Y.1973), mandamus denied sub nom. United States v. Griesa, 481 F.2d 276 (2d Cir. 1974).

6. Commodity Futures Trading Comm'n v. Crown Colony Commodity Options, Ltd., 434 F.Supp. 911 (S.D.N.Y.1977).

7. Id. at 915. The hearing on the motion for a preliminary injunction extended over a 3-day period during which the Commission supplemented its moving affidavits and exhibits with the testimony of several customers of Crown Colony and one of its former supervisory salesmen. The Court granted preliminary injunctive relief and subsequently each defendant consented to a final judgment.

there were approximately forty-eight stall-like telephone cubicles and the salesmen making the outgoing calls were under the scrutiny of supervisors. The evidence in the civil proceeding established that the salesmen worked in two three-hour shifts of approximately fifty persons each, and that each supervisor was responsible for the activities of approximately twelve salesmen.

It is beyond dispute that most, if not all, of the acts and conduct in furtherance of the alleged scheme to defraud occurred in Miami and that it was the "nerve center" of the alleged illicit operations in carrying on the scheme, and many persons were participants in such activities. Although Crown Colony maintained a New York office where certain files and records were kept, and to and from which checks were mailed and distribution made of funds, the indictment itself emphasizes that "its Miami sales office—which was managed and operated by the defendant Alter, as general manager, and the defendant Joel Steiner, as sales manager—accounted for approximately two-thirds of its gross revenues." Moreover, the indictment charges that not only did the fraudulent telephone solicitations and follow-ups take place from the WATS lines in the Miami office, but that follow-up mailings of Crown Colony literature to prospective purchasers were made from that office. In sum, the central location of the allegedly criminal acts charged against defendants is Miami, not New York, and this fact weighs in favor of transfer.

That most of the allegedly criminal acts occurred in Miami implicates a second factor—convenience of witnesses. This Court, because it has heard aspects of the case in the civil proceeding, has some view of what evidence is required and likely to be offered if the government is to sustain the criminal charges which, because of the standard of proof beyond a reasonable doubt, obviously will require much additional evidence (testimonial and documentary) beyond that presented in support of the application for preliminary injunctive relief.[8] A great number of salesmen and supervisors whose testimony the government will necessarily require to establish the alleged fraudulent conduct reside or are located in the Miami area. These potential witnesses may be referred to as the government's "substantive" witnesses. The government states that in its direct case it expects to call thirty to forty witnesses, approximately half of whom, presumably the substantive witnesses, reside in Miami, but it presses that the other half, mostly "victim" witnesses, are residents of neither New York nor Miami.

The "victim" witnesses under the alleged scheme to defraud are named in either the mail or wire fraud counts. They reside in eleven states: Ohio, Utah, Iowa, Washington, Kansas, Nebraska, Florida, Oregon, South Dakota, Minnesota and Mississippi. In addition, the government asserts it is likely to call witnesses from California, Colorado, Washington, D.C. and Toronto. The prosecution argues that transfer will not lessen the inconvenience of the non-New York and non-Miami witnesses and suggests New York as a more convenient forum because of its superior air service and extensive hotel accommodations. It is obvious that the non-New York and non-Miami witnesses will be inconvenienced no matter where the case is tried, and even assuming, as the government contends, that New York has superior air service, Miami, as a resort and vacation area, has substantial and direct air service from all major cities of the United States. Thus the inconvenience to these witnesses is a matter of more or less, but not of any real substance.

The government states that it plans to call a number of New York witnesses without specification as to the nature of their testimony. In addition, it also asserts that if a good faith defense is offered at trial it will present rebuttal testimony by New York City area residents to establish that defendants had no basis for relying, and did

8. Indeed, because of the Court's familiarity with the issues and facts presented in the civil action, the defendants moved for this Court's recusal pursuant to 28 U.S.C. § 455(a), which motion was denied.

not in fact rely, on the advice of counsel. In this instance, too, there is no specification of the number of rebuttal witnesses that may be called. But, in any event, it appears that the New York witnesses, compared to those based in Miami and elsewhere, are comparatively few in number and include witnesses to identify or authenticate documentary material. As to the latter group, defendants represent that they will stipulate to the authenticity of bank and brokerage records, thereby eliminating the need for calling them. Moreover, although government and other files are in New York, they can readily be shipped to Miami.

The defendants state they anticipate calling no less than 100 sales personnel who reside in the Miami area to testify as to their good faith efforts to prevent any knowing false or misleading representations and as to their training and instruction by defendants. Defendants also represent they plan to call seven named attorneys who practice in the Miami area and allegedly advised the defendants as to the legality of the sales representations and overall operation of the Miami office; and one or more Assistant Attorneys General of the State of Florida who participated with some of the named counsel in rewriting the format of the sales presentation in order to conform with the law as evidence of their good faith.

While this Court indicated upon the argument of the motion to transfer that defendants' plan to call no less than 100 sales personnel appeared somewhat exaggerated and that a trial court most likely would exercise its power to foreclose cumulative evidence, nonetheless defendants would be entitled to present evidence through a substantial number of sales personnel as well as counsel to establish good faith in resisting the government's charges.[9] All these witnesses reside in the Miami area. Thus it appears that the majority of witnesses for both government and defendants reside in the Southern District of Florida or outside of this district and that the factor of convenience of witnesses strongly tilts in favor of a transfer.

Upon the argument it was represented by Miami counsel that the criminal docket of the proposed transferee court is relatively current and if the case were transferred it would be assigned forthwith to a judge. Additionally, defendants urge in favor of the transfer that each is a resident of the Miami area; that the lawyer for each is a nonresident of this district—one resides and practices in Miami and the other resides and practices in the District of Columbia area, and the latter asserts that Miami is as convenient for him as New York City. The defendants advance further arguments, such as lack of available financial resources to bring numerous defense witnesses to this district and inability to absorb the expense and maintenance of themselves during an estimated four to six week trial if conducted in this district. The Court is not persuaded of their claimed financial status; indeed, the government's proof tends to negate it. But this, as well as other relevant factors need not be discussed in detail, although the Court has fully considered every factor bearing upon a motion of this type, since it is fully persuaded that the convenience of witnesses is so predominant that a trial in this district would be unduly burdensome and that fairness requires a transfer in the interest of justice.

Accordingly, the motion of the defendants to transfer this case to the United States District Court for the Southern District of Florida is granted.

---

9. *See United States v. Arnold*, 543 F.2d 1224 (8th Cir. 1976), *cert. denied*, 429 U.S. 1051, 97 S.Ct. 765, 50 L.Ed.2d 768 (1977); *Sparrow v. United States*, 402 F.2d 826 (10th Cir. 1968).