**UNITED STATES of America, Plaintiff,**

v.

**DAEWOO INDUSTRIAL CO., LTD., Daewoo International (America) Corp., Doo Ho Chung A/K/A Donny Chung, Chan Seock Kim, Dong Min Kim, Hee Choong Lee, A/K/A Hank Lee, Jae Young Lee, A/K/A Jae Yong Lee, Young Seung Lee, Gab Hun Song, A/K/A Gab Heon Song Jeong Won Suh, Yung Kuk Yang, Defendants.**

**No. CR 84–38.**

United States District Court,
D. Oregon.

May 24, 1984.

Charles H. Turner, U.S. Atty., D. Or., William C. Brown, Karen A. Morrissette, Sp. Asst. U.S. Attys., Washington, D.C., for plaintiff, U.S.

John Ransom, Ransom, Blackman & Simpson, Portland, Or., Jay D. Zeiler, Michael J. Madigan, Akin, Gump, Strauss, Hauer & Field, Washington, D.C., Richard Danzig, Max Gillam, David Sandalow, Latham, Watkins & Hills, Los Angeles, Cal., Barnes H. Ellis, Stoel, Rives, Boley Fraser & Wyse, Portland, Or., Stephen V. Wilson, Hochman, Salkin & DeRoy, Stephen D. Miller, Miller & Nolan, Inc., Beverly Hills, Cal., William Schweitzer, Baker & Hostetler, Washington, D.C., Donald C. Smaltz, Smaltz & Neelley, Los Angeles, Cal., Ronald Hoevet, Hoevet, Snyder & Van Duyn,

P.C., Portland, Or., for defendants, Daewoo Industrial Co., Ltd. et al.

## OPINION AND ORDER

JAMES M. BURNS, Chief Judge.

### INTRODUCTION

After a lengthy investigation, a Federal Grand Jury in Portland, Oregon returned a thirty-two count indictment charging Daewoo Industrial Co., Ltd. (Daewoo-Korea), a major Korean trading company, Daewoo International (America) Corp. (Daewoo-America), and nine present or former employees of the companies with violating 18 U.S.C. §§ 2, 371, 1001, and 1503 in connection with the importation of steel from South Korea into the western United States during the period 1980-82. Defendants are charged, principally, with conspiring to mislead and actually misleading the Government through false customs filings as to the purchase price paid by Daewoo-America to Daewoo-Korea for certain imported steel products, and as to the resale price of those products.[1] Daewoo-America is also charged with two counts of obstruction of justice arising from the submission of false books and records to the Federal Grand Jury in Portland. Two individuals are also charged in one obstruction count.

The trial is expected to last approximately two to three months. Nearly 100 witnesses are expected to be called. Thousands of documents will be relied upon. The Daewoo office in Seoul, Korea and four Daewoo offices in the western United States are involved in this law suit. The individual defendants are Korean salesmen and business executives living in this country. They have no previous criminal records. Many of them are unfamiliar with our language, our culture, and the intricacies of our legal system. Many have families who are new to this country and who speak little English.

Because of the defendants' limited fluency in the English language, interpreters will be necessary throughout the trial. Interpreters will also be required for the many Korean-speaking witnesses who will be called and for hundreds of documents that will have to be translated from Korean to English and from English to Korean.

All of the defendants before the court have moved for a change of venue to the Central District of California pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure.[2] Rule 21 provides:

> For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district.

### DISCUSSION

#### The *Platt* Case

The Supreme Court has furnished a list of ten factors to guide lower courts in the exercising of discretion in evaluating motions under Rule 21(b):

1) location of the corporate defendant
2) location of possible witnesses;
3) location of events likely to be in issue;
4) location of documents and records likely to be involved;
5) disruption of defendant's business unless the case is transferred;
6) expense to the parties;
7) location of counsel;
8) relative accessibility of place of trial;
9) docket condition of each district or division involved; and,
10) any other special elements which might affect the transfer.

---

1. At all times relevant, the Antidumping Act, 19 U.S.C. § 160 *et seq.,* amended 19 U.S.C. §§ 1673-1677, provided for the imposition of additional duties, known as dumping duties, if the Government determined that foreign merchandise was being imported into the United States at less than its fair value and that the conduct was injuring an industry of the United States.

2. Two individual defendants, G.H. Song and Chan Seock Kim, are not within the jurisdiction of the court, thus are not parties to the change of venue motion.

*Platt v. Minnesota Mining and Manufacturing Co.*, 376 U.S. 240, 243–44, 884 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964).

There is little Ninth Circuit case law on Rule 21(b) transfers and therefore little guidance for me on the application of the *Platt* factors. The other circuits also do not offer a great deal of guidance. Operating in somewhat of a vacuum, I will analyze the facts in terms of the *Platt* factors to determine which location would be most convenient and will best serve the interests of justice.

### Location of the Corporate Defendant

Daewoo-Korea is incorporated under the laws of the Republic of Korea and has its principal business offices in Seoul, Korea. Daewoo-America, a wholly owned subsidiary of Daewoo-Korea, is incorporated under the laws of New York and has twelve offices in the United States. The Daewoo-America offices that are involved in this matter are located in Los Angeles, San Francisco, Houston, and Seattle. The Los Angeles office is the regional headquarters. It has sixty-one employees, two of whom are defendants and two more of whom have already been subpoenaed as government witnesses. The San Francisco office has nine employees, two of whom are defendants, and one more of whom has been subpoenaed as a witness. The Houston office has six employees, two of whom are defendants. The Seattle office has seven employees, one of whom is a defendant.

During the relevant time period, Daewoo-America's Los Angeles and Houston offices sold steel products directly to hundreds of different end-users of such products. The San Francisco and Seattle offices marketed such products principally through two intermediary companies, Myers Pacific, located in Seattle, and Grif-

fith Amkor, located in Portland. Of the fourteen Daewoo-American customers identified in the indictment, only these two were located in the Pacific Northwest.

The indictment cites transactions with six of the over 350 steel customers that did business with the Daewoo Los Angeles office between 1980–82. Those six are from California. The indictment also cites transactions with six of the over 100 steel customers of the Houston office. Five of those six Houston customers are from Texas; one is from Louisiana.

In *Platt*, the Supreme Court had before it a corporate defendant. The general principles stated have been applied to individual defendants as well. *United States v. Aronoff*, 463 F.Supp. 454, 457 (S.D.N.Y.1978). The individual defendants before the court in this action are D.H. Chung and Y.K. Yang, who work and live in the Los Angeles area; Y.S. Lee, who worked in Los Angeles during the time period in question and who is now a resident of New Jersey; J.Y. Lee, who works and lives in San Francisco; D.M. Kim, who works and lives in Seattle; and H.C. Lee and J.W. Suh, who work and live in Houston, Texas. None of the individual defendants lives in Portland.[3]

The defendants have no constitutional right to a trial in their home districts. Article III, § 2 of the Constitution provides that "The Trial of all Crimes … shall be held in the State where the said Crimes shall have been committed.…" The sixth amendment also provides for criminal prosecutions in the State and the district where the crime was committed.[4] The Supreme Court in *Platt* points out, however, that "The provision for trial in the vicinity of the crime is a safeguard against the unfair-

---

3. Two other defendants not before this court are: G.H. Song, who worked in Los Angeles during the time period in question and is now a resident of Korea, and C.S. Kim, who is a San Francisco resident but is now hospitalized in Korea.

4. The full text of the sixth amendment is:
   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defense.

ness and hardship involved when an accused is prosecuted in a remote place." *Platt*, 376 U.S. at 245, 84 S.Ct. at 772. Thus, the Court concluded that the location of the corporate defendant's home has "no independent significance in determining whether transfer to that district would be 'in the interest of justice', although it may be considered with reference to such factors as the convenience of records, officers, personnel and counsel." *Id.* at 245–46, 84 S.Ct. at 772; *United States v. Polizzi*, 500 F.2d 856, 900 (9th Cir.1974) (residence of defendant is a factor to be considered, but it is not controlling).

Each of the factors referred to will be discussed under other *Platt* factors. For now, I will simply note that none of the individual defendants has either an office or home in Portland. It appears that absent any countervailing hardship to the government, the location of the defendants favors transfer.

### Location of Possible Witnesses

Location of witnesses appears to be one of the more significant factors in the cases. *See* 8 J. Moore, *Moore's Federal Practice*, ¶ 21.04(2)(b)(i) (2d ed. 1983); *United States v. Alter*, 81 F.R.D. 524 (S.D.N.Y.1979). In *Alter*, the court ordered transfer from New York to Miami because the "convenience of the witnesses is so predominant that a trial in [New York] would be unduly burdensome and ... fairness requires a transfer in the interest of justice." *Id.* at 527.

The Ninth Circuit has required more than a bald statement of numbers and general location of witnesses in the cases where the issue of witness convenience is addressed. In *United States v. Testa*, 548 F.2d 847 (9th Cir.1977), the court affirmed a denial of a Rule 21(b) motion in part because the defendant had offered no evidence of attempts to contact or subpoena witnesses; he did not indicate identities of witnesses or give the nature of their testimony other than to state they were character witnesses. In *Lindberg v. United States*, 363 F.2d 438 (9th Cir.1966) the court found no abuse of discretion in the denial of a Rule 21(b) motion where the defendant asserted that the witnesses were located in the district where transfer was sought but witnesses were neither named nor their testimony described.

Here, the government proposes to call fifty-six witnesses but refuses to disclose their identities or location, except to state that fourteen are from the Los Angeles area, six are from Seattle, eight are from Portland, nine are from the San Francisco area, sixteen are from Houston and three are from other parts of the country. The government has apparently subpoenaed five of these witnesses.[5] Two of the subpoenaed witnesses, Young J. Lee and Yong J. Lee, who live in the Los Angeles area, have filed affidavits to the effect that a trial in Portland would work a hardship on them and that they would prefer a trial in Los Angeles. One of the subpoenaed witnesses lives in San Francisco.[6] The location of the other two subpoenaed witnesses was not disclosed by either party.

The defendants expect one of the government's main witnesses to be Barbara Meehan, the comptroller in the Los Angeles office during the relevant period.[7] She lives in Los Angeles with her infant son and husband. She has submitted a declaration that travel to Portland for trial would be inconvenient and burdensome for her and she would prefer a trial in Los Angeles.

As to witness convenience, one court remarked, "Even though prospective witnesses would have no standing to move for a

---

5. The corporate defendants say that the Government has subpoenaed five material witnesses, none of whom resides in Portland. (Reply Memorandum of Daewoo Industrial Corp. Ltd. and Daewoo International (America) Corp. in Support of Motion to Transfer.)

6. *See* Defendants' Joint Motion to Transfer p. 7.

7. Barbara Meehan has not yet been subpoenaed by the government but expects to be called as a witness. She has been interviewed by the Government and has testified before the grand jury three times. (Declaration of Barbara Meehan in Support of the Motion for change of Venue.)

transfer, their convenience may certainly be considered ... in the exercise of [the court's] discretion." *United States v. Olen,* 183 F.Supp. 212, 219 (S.D.N.Y.1960) (quoted in *United States v. Jessup,* 38 F.R.D. 42, 44 (M.D.Tenn.1965).

The corporate defendants plan to call at least fourteen customer witnesses largely from the Los Angeles area whose testimony, defendants assert, will serve to explain and put into perspective Daewoo's relationship with fourteen other customers whose relationship with Daewoo the government deems questionable. In addition, each individual defendant plans to call several character witnesses most of whom are from the Los Angeles area. Defendant D.H. Chung has submitted, *in camera,* a list of the names and addresses of character witnesses who are prepared to testify in his behalf. Defendant J.C. Lee has submitted, *in camera,* a list of witnesses and their proposed testimony. Defendant Y.S. Lee has submitted a declaration that he intends to call several character witnesses who reside in the Los Angeles area. Defendants state that they do not anticipate calling any Portland witnesses. They claim that the failure of the government to provide meaningful information concerning its witnesses makes it difficult for the defendants to respond with specifics as to the witnesses they will call.

Although the witnesses appear to come from diverse areas, it seems that the bulk of them including the material witnesses will come from the Los Angeles area. Those whose names and addresses have been furnished and those who filed some form of objection to trial in Portland are from the Los Angeles area. This factor weighs in favor of transfer.

*Location Of Events Likely To Be In Issue*

The government and the defendants disagree as to what are the "events in issue." The government says the events are the false statements presented to the United States Customs Service in Portland pertaining to Korean steel shipments delivered to Portland docks. These false statements form the basis of the twenty-nine substantive false statement offenses which constitute the bulk of indictment. Also, the government includes the events which led to charges of obstruction of a grand jury investigation which took place in the District of Oregon and the Northern District of California.

Defendants, on the other hand, characterize the Portland acts as merely ministerial. They contend that the events in issue are the eighty-two overt acts listed in the conspiracy count which the defendants refer to as the "heart and soul" of the government's case. The places and the frequency of the overt acts are as follows: twenty-eight in Los Angeles, twenty-eight in San Francisco, twenty-four in Portland, twenty-five in Houston, ten in Seoul, Korea and six in Seattle. The defendants point out that the sum of the numbers is greater than eighty-two because some overt acts relate to two cities. For example, all of the twenty-four Portland acts were ministerial acts which were consequences of acts that occurred in San Francisco; two Houston acts relate to Los Angeles and; four Seattle acts relate to San Francisco.

Obviously the charged conspiracy was widespread and all the false statements cited by the government and eighty-two overt acts cited by the defendants are events in issue. If the events in issue are overt criminal acts, elements of the charged federal crime, that occur in a district, the trial venue is constitutionally proper and presumptively convenient in that district. *See* 8 J. Moore, *supra* at ¶ 21.04(2)(b)(i). Here the overt criminal acts took place in more than one district. Presumably, venue would be convenient in any of the districts where an overt act was committed. In *United States v. Baltimore and Ohio R.R.,* 538 F.Supp. 200 (D.D.C. 1982), the court said that venue as to prosecution of all members of a conspiracy lies either in the district where the conspiracy was formed or in any district in which any overt act in furtherance of the conspiracy was committed. *Id.* at 204 (citations omitted). This factor, at best, is neutral with

respect to the motion for the change in venue.

### Location Of The Documents Likely To Be Involved

This case involves a massive amount of documentary evidence. The parties disagree as to where the bulk of the relevant documents are. In its grand jury investigation, the government amassed over 100 large boxes, or approximately 1100 square feet of original documents obtained from Daewoo offices, customers, and government offices around the country. The government claims that these are the only relevant documents and that only copies of the originals remain in the scattered Daewoo offices.

Defendants believe, however, that the weight of the government's case depends on records compiled and kept in Los Angeles by defendant D.H. Chung and Barbara Meehan, the comptroller for Daewoo during the relevant period. Defendants' records seem as spread out as the alleged conspiracy. The only documents in Portland however are those brought here for the Grand Jury investigation.

The defendants have offered to pay for the shipment of the 100 boxes of documents to Los Angeles and for the lease of equivalent space to store them. They argue that it is not possible to pay for the inconvenience to witnesses and defendants if the trial is held in Portland.

The location of documents crucial to the defendants' case is one of the more controlling *Platt* factors. *See* 8 J. Moore, *supra* at ¶ 21.04(2)(b)(i); *Jessup*, 38 F.R.D. at 47 (transfer ordered to district where documents and records of defendants' business were located).

Shipping of documents has been approved by the Ninth Circuit. In *United States v. Schoor*, 597 F.2d 1303 (9th Cir. 1979), the defendant was charged in San Francisco with conspiracy to import, possess and distribute heroin. Defendant's business records were in Miami, as were his character witnesses. The court denied the motion for a transfer saying that the defendant could get a continuance to obtain records.

Even if many of the documents in the Los Angeles office are copies, it would seem easier for the defendants to identify the documents they need to facilitate their defense by reference to their own files and then to obtain the originals from the government than to have to search through boxes of documents the government has.

While not enough to justify transfer by itself, this factor favors transfer.

### Disruption Of The Accused's Business Unless The Case is Transferred

Daewoo's western regional headquarters is in Los Angeles. There is no Daewoo office in Portland. The defendants say that a majority of Daewoo's western steel sales force is involved in this case. The trial is expected to last approximately two to three months. Defendants argue, therefore, that trial in a city with a Daewoo office is necessary in order to avoid crippling the corporate defendants' ability to sell steel in America, and to avoid harm to the individual defendants' reputations as salesmen.

The government argues that the defendants will be away from their place of business no matter where the trial is held.

Business inconvenience is inevitable for defendants in a criminal case. *United States v. Culoso*, 461 F.Supp. 128, 136 (S.D. N.Y.1978), *aff'd*, 607 F.2d 999 (2nd Cir. 1979). In *Culoso* the court denied the request for transfer saying that "mere inconvenience ... [does] not ipso facto make the necessary showing that a transfer is required in the interest of justice." *Id.* at 136. The court in *Culoso* did say what would warrant a transfer. "[I]t should appear that a trial would be so unduly burdensome that fairness requires the transfer to another district where a trial would be less burdensome...." *Id.* at 136.

The Seventh Circuit considers it error not to consider interruption of the defendant's business. In *Minnesota Mining and Manufacturing Co. v. Platt*, 345 F.2d 681 (7th Cir.1965) (vacated as moot, 382 U.S. 456, 86

S.Ct. 643, 15 L.Ed.2d 522, 1966), the court said that the interruption of a corporate defendant's business and the additional expense that the corporation would incur in having to defend a criminal action in another district were important criteria that should have been considered by the trial judge in ruling on the defendant's motion to transfer. *Id.* at 685.

In this case there would likely be some business benefit to having the trial in Los Angeles. It also seems likely that Daewoo will continue to sell steel products while the trial takes place, no matter where it is held. The question in this case is not whether the defendants will suffer business inconvenience, but whether a protracted trial in a city where the defendant has no business office will so unduly burden the defendants' ability to conduct business that fairness requires a transfer.

In a business such as sales, where so much depends on personal involvement, a few hours each day or on weekends could make a difference. *United States v. Gruberg*, 493 F.Supp. 234 (D.C.N.Y.1979) (transfer ordered where trial in Albany would be less disruptive of defendant's business than trial in New York). *See Aronoff*, 463 F.Supp. at 459. By itself this factor favors, but does not justify transfer.

*Expense To Parties*

Travel and lodging for defendants, witnesses, counsel and interpreters will be a major expense, particularly in a protracted trial such as this. None of the defendants is from Portland; two are from Los Angeles, one is from Seattle, one lives in New Jersey, one lives in San Francisco, and two live in Houston. All the defendants would prefer a trial in Los Angeles for various reasons. Many of the defendants have family and friends in the Los Angeles area who have offered lodging to the defendants and their families during the trial. The defendants have no family or friends in Portland.

Each of the individual defendants intends to call several character witnesses from the Los Angeles area. Defendants do not anticipate calling any witnesses from the Portland area. The locations of witnesses has been discussed previously. It is clear that all of the defendants and their witnesses would have to travel to trial in Portland, whereas, a trial in Los Angeles would greatly reduce the numbers of parties and witnesses who must travel. (It would eliminate most if not all costs for character witness travel).

Another significant factor in considering expense is the need for Korean translators. Both sides concede the need for translators, although they disagree as to how many will be needed and for which purposes.

Each of the defendants has limited fluency in the English language. Approximately ten per cent of the thousands of documents are in the Korean language and many will have to be translated from English to Korean. Two-hundred documents have already been translated for the grand jury investigation. The government says it will need translators for parts of the testimony of four of the fifty-six witnesses it will call. The defendants say they will need translators, perhaps one for each defendant, during court and after court hours to facilitate communication between clients and lawyers about the proceedings each day.

There are no court certified Korean translators in Portland. The two used during the grand jury investigation were brought in from Los Angeles and Seattle. There are four court-approved Korean translators in Los Angeles and many more non-certified translators to draw upon from Los Angeles' large Korean community.

In this case, translators are as necessary as the witnesses. The necessity of hiring translators from outside of Portland and requiring their constant presence at a two to three month long trial in Portland would greatly burden the defense efforts.

The government asserts that it will be inconvenienced if the trial is transferred because all of the relevant documents are in Portland and because a special customs agent from Portland has been assigned as

the case agent. The agent would have to relocate to Los Angeles. Three other Seattle customs agents familiar with the case would likely have to be replaced by local Los Angeles agents.

The defendants have already agreed to accept the expense of shipping and storing the documents in Los Angeles. Relocating one customs agent is more reasonable than relocating several defendants, witnesses, and translators to a community where they will have no family, friends or relevant community to relate to during a protracted trial. The financial and psychological cost to defendants weigh heavily in favor of a transfer.

Some courts have held that it is the ability to bear the expense and not the size of any expense that concerns the court on a motion of transfer. *Culoso,* 461 F.Supp. at 136 n. 12 (citations omitted).

I agree with those courts that hold that financial weakness is not a pre-requisite to justify a transfer based on added expense. In *Minnesota Mining, supra* 345 F.2d 681, the court said:

> We recognize that there are cases holding that financial *weakness* of a defendant in a case brought in a jurisdiction other than its home location *justifies a transfer* to the home district.... However, we cannot agree that it is conversely true ... that the financial *strength* of a defendant in such a case is a *reason* for rejecting its argument that proof of added expense calls for *transfer.*

*Id.* at 685. (Emphasis in original)

The court in *Jessup, supra* 38 F.R.D. at 47 said:

> [I]t would be in the interest of justice to transfer an action if the expense to be incurred by the defendants if the action were not transferred is considerably greater or more burdensome than the expense which would be necessary if the action were transferred. And this is true whether the defendant be rich or poor.

Here the expense to defendants will be considerably greater if the trial is not transferred. The expense to the government will only be slightly greater because of the need to relocate the customs agent if the case is transferred.

*Location of Counsel*

Three defense lawyers are from Los Angeles. Two are from Washington, D.C. Two are from Portland. All defense counsel support the motion for change of venue for their own convenience or for the convenience of their clients. The government's counsel are in Washington, D.C. It would not be less convenient to the government's counsel to transfer this case to the Central District of California. The Location of Counsel is not a significant factor in this Rule 21(b) motion.

*Relative Accessibility of Place of Trial*

Both Portland and Los Angeles are major metropolitan areas with readily available commercial transportation. According to flight schedules submitted by the defendants, Los Angeles has a significantly larger number of flights to and from Houston and San Francisco, and has direct flights to and from Seoul Korea. Having the trial in Los Angeles may serve to reduce travel time and make trial days more flexible. When thrown into the balance, the slightly greater accessibility of Los Angeles favors transfer.

The government has suggested that the trial may coincide with the 1984 Summer Olympics to be held in Los Angeles. There is little possibility that this case will go to trial before early fall of 1984. Thus, there is little need to worry about any impact the Summer Olympics may have.

*Docket Condition of Each District or Division Involved*

It appears that the defendants would receive a speedy and fair trial in either the District of Oregon or the Central District of California. Defendants research shows the median time from filing to disposition of cases in which the defendant had a jury trial for the year ended June 30, 1983 was 7.2 months in the District of Oregon and 5.4 months in the Central District of California. Docket conditions are not a significant factor in this request for transfer.

*Other Special Elements Which Affect the Transfer*

The human aspects of this change of venue motion are significant. The defendants are Korean salesmen and business executives living in this country. They have no previous criminal records. Many of them are unfamiliar with our language, our culture, and the intricacies of our legal system. Many have families who are new to this country and who speak little English. A two to three month trial away from family would work a great hardship on these defendants and their families. As previously indicated, the individual defendants have family or friends in the Los Angeles area who have indicated their willingness to provide lodging to the defendants and their families during a trial. These defendants have no family or friends in Portland. Furthermore, there is a significant Korean community in Los Angeles that does not exist in Portland. Defendants offer these statistics which the government does not rebut: approximately 300,000 to 400,000 Koreans live in the Los Angeles area; roughly 10,000 live in the Portland area.

To try this case in unfamiliar jurisdiction with a very small Korean population, far away from family and friends who could provide financial and emotional support would exacerbate needlessly the fears and alienation that the defendants may feel. Granting the transfer motion would minimize the special difficulties these defendants face.

Defendants rely on *Aronoff, supra* 463 F.Supp. at 454, to support their argument that the hardship of a defendant's being required to face a trial far from home is a compelling factor in a transfer motion. The court in *Aronoff* granted the motion for transfer reasoning that denying it would deny the defendant the support of his family, friends, and chosen counsel, and would seriously disrupt his small business

which was on the brink of failure. The trial in *Aronoff* was expected to last three and one half weeks. Here the defendants are part of a large and apparently secure financial business. On the other hand, the trial is expected to last two to three months. The length of trial when considered with the special cultural difficulties these defendants and their families will have to face if trial is held in an unfamiliar community tips the balance of inconvenience sharply in defendants favor.

CONCLUSION

■ The foregoing analysis of the ten *Platt* factors relevant to a transfer motion establishes that the instant motion should be granted. Rule 21(b) requires a balancing of which district would be more convenient. Wright, *Federal Practice and Procedure*, Criminal 2d § 345. The court in *Aronoff, supra* said the most important consideration was the balance of the hardships. In *United States v. Cohen*, 35 F.R.D. 227 (D.C.Cal.1964), the court said:

> In weighing and balancing the respective conveniences of the parties, the Court should not grant the motion unless the factors involved indicate a balance of inconvenience of some substance to the defendant."

*Id.* at 232.

I am persuaded that the inconvenience to defendants if the trial were not transferred would be substantially greater than if transfer were ordered. The inconvenience to the government if transfer is ordered will be slight. Therefore, for the convenience of the parties and in the interests of justice, this proceeding will be transferred to the Central District of California.[8]

IT IS SO ORDERED.

---

**8.** I request counsel to confer and attempt to reach agreement on the aspect of reimbursement to the Government as regards the cost of shipping and lease of space for the documents you stored in Portland. If counsel cannot agree, I will hear them, then issue an appropriate order. I retain jurisdiction for the limited purpose of this aspect of the case.