**UNITED STATES of America**

v.

**Maurice OLEN, Margaret Mandeville, Lewis F. Childree, Homer Kerlin and Luther E. Clements, Defendants.**

United States District Court
S. D. New York.
April 28, 1960.

S. Hazard Gillespie, Jr., U. S. Atty., Morton S. Robson, Chief Asst. U. S. Atty., New York City, Arnold Enker, Asst. U. S. Atty., New York City, of counsel, for the United States.

Davies, Hardy & Schenck, New York City, John W. Burke, Burton H. Brody, New York City, of counsel, for defendant Maurice Olen.

Margaret Mandeville, pro se.

Tompkins & Lauren, New York City, Herbert Edelhertz, New York City, Willis C. Darby, Jr., Mobile, Ala., of counsel, for defendants Lewis P. Childree, Homer Kerlin and Luther E. Clements.

CASHIN, District Judge.

Considered herein are three motions to transfer the venue of this case to the District Court for the Southern District of Alabama under Rule 21(b) of the Federal Rules of Criminal Procedure, 18 U.S.C. Defendants Olen and Mandeville move separately, and defendants Childree, Kerlin and Clements move jointly.

The indictment contain 8 counts. Counts I through V charge a violation of Section 17 of the Securities Act of 1933 (15 U.S.C.A. § 77q(a)). The counts are all pleaded in the words of the statute and differ only in that separate mailings in each count are charged. Defendant Margaret Mandeville is named as defendant only in Count I.

Section 17 of the Securities Act of 1933, the terms of which are set out in the margin,[1] basically makes it unlawful, in the "offer or sale" of any securities by the use of any interstate instrumentality, to practice any fraud or deceit.

Count VI of the indictment charges a violation of Section 14 of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78n). The terms of Section 14 are set out in the margin.[2] Basically the crime charged is soliciting proxies in respect to a registered security in contravention of Rule 14a–9 of the General Rules and Regulations promulgated by the United States Securities and Exchange Commission in that a fraudulent proxy statement was utilized. All of the defendants, except Mandeville, are named in this Count.

Count VII charges a violation of the same statute by the filing of a false proxy

---

**1.** Fraudulent Interstate Transactions

Sec. 17. "(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

"(b) It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

"(c) The exemptions provided in section 3 shall not apply to the provisions of this section."

**2.** Proxies

Sec. 14. "(a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of any national securities exchange or otherwise to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

"(b) It shall be unlawful for any member of a national securities exchange or any broker or dealer who transacts a business in securities through the medium of any such member to give a proxy, consent, or authorization in respect of any security registered on a national securities exchange and carried for the account of a customer in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

statement with the Securities Exchange Commission. All of the defendants, except Mandeville, are named in this Count.

Count VIII charges all the defendants with a conspiracy, along with other co-conspirators not named as defendants, to violate both the Securities Act of 1933 and the Securities Exchange Act of 1934.

The Government opposes the motions to transfer on two grounds:

First, that the venue would be improper in the proposed transferee court as to Counts I through VII; and

Second, that in any event the interests of justice would not be served by such a transfer.

■ Under the provisions of Rule 21 (b) of the Federal Rules of Criminal Procedure [3] I can look only to the indictment and any bill of particulars filed thereunder in determining whether the proposed transferee court has jurisdiction. A perusal of these documents indicates clearly that the basically wrongful action giving rise to all of the counts in the indictment is the allegedly fraudulent maintaining of the books and records of The Olen Company, Inc. Defendant, Maurice Olen, was president of the Company; defendant, Margaret Mandeville, was an employee of the Company whose duties consisted of maintaining these records, and defendants, Lewis F. Childree, Homer Kerlin and Luther E. Clements, were members and an employee of an accounting firm who allegedly fraudulently audited the said books.

Thus, in the first five counts a prospectus misrepresenting the financial status of the Company was purportedly used in obtaining the five specific sales which are the bases of the five counts. The specific use of the mails, charged in each of the counts, consisted of a confirmation of the purchase of stock, all of which confirmations were mailed from the Southern District of New York.

The same fraudulent maintaining of the books was the basis of the balance sheet and earnings and surplus statements which are the basis for Counts VI and VII.

It would appear clear to me that since the basically improper action which is charged took place at the home office of The Olen Company, Inc. in Mobile, Alabama, that the trial should be held in that District. The Government, however, strongly argues that since specific mailings are mentioned in the first five counts of the indictment the case is basically a mail fraud case and thus should be tried only in the District from which or into which the mailings took place. Similarly, it is argued that, with regard to Count VI of the indictment, the use of the mails occurred in the Southern District of New York since that is the place from which the proxy solicitations were mailed, and the use of the mails in Count VII occurred in the Southern District of New York where the statement was prepared and mailed to the Securities and Exchange Commission in Washington, and, thus, Mobile, Alabama could not conceivably be the proper place of venue.

I find myself clearly constrained to disagree with the contention of the Government. This constraint is impelled by a consideration of the rationale of United States v. Johnson, 1944, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236. In the Johnson case the defendants were being prosecuted for using the mails for sending dentures in violation of the Federal Denture Act of 1942 (18 U.S.C. § 1821). The Government indicted the defendants in the District Court for the district into which the dentures had been mailed.

---

3. Rule 21.
Transfer from the District or Division for Trial
"(b) Offense Committed in Two or More Districts or Divisions. The court upon motion of the defendant shall transfer the proceeding as to him to another district or division, if it appears from the indictment or information or from a bill of particulars that the offense was committed in more than one district or division and if the court is satisfied that in the interest of justice the proceeding should be transferred to another district or division in which the commission of the offense is charged."

This indictment was quashed and the Government appealed. The Federal Denture Act did not have any specific venue provision. Defendants' contention was that they should be tried in the district from which they had mailed the dentures. Because of my strong reliance on the rationale of the Johnson case I will quote, at length, from that opinion wherein the question posed was answered in favor of the defendants—

"Must these appellees be tried in the Northern district of Illinois or may they be tried in the district of any State through which the dentures were carried including Delaware, the place of delivery? Has Congress authorized such discretion in the enforcement of this Act? If it has, there is an end to the matter, for Congress may constitutionally make the practices which led to the Federal Denture Act triable in any federal district through which an offending denture is transported. Armour Packing Co. v. United States, 209 U.S. 56 [28 S.Ct. 428, 52 L.Ed. 681]. An accused is so triable, if a fair reading of the Act requires it. But if the enactment reasonably permits the trial of the sender of outlawed dentures to be confined to the district of sending, and that of the importer to the district into which they are brought, such construction should be placed upon the Act. Such construction, while not required by the compulsions of Article III, § 2 of the Constitution and of the Sixth Amendment, is more consonant with the considerations of historic experience and policy which underlie those safeguards in the Constitution regarding the trial of crimes.

"Aware of the unfairness and hardship to which trial in an environment alien to the accused exposes him, the Framers wrote into the Constitution that 'The Trial of all Crimes * * * shall be held in the State where the said Crimes shall have been committed * * *.' Article III, § 2, cl. 3. As though to underscore the importance of this safeguard, it was reinforced by the provision of the Bill of Rights requiring trial 'by an impartial jury of the State and district wherein the crime shall have been committed.' Sixth Amendment. By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates. Thus, an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district. Plainly enough, such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution.

"These are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them. Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not com-

manded by it." 323 U.S. at pages 274–276, 65 S.Ct. at page 250.[4]

█ The Supreme Court has clearly taught, therefore, that any criminal statute should be construed, if possible, so as to lay the venue of a case at the home area of a defendant, at least so long as that home area has any connection with the wrong charged. It does not even matter that the act done in the home district was by the laws of the state of domicile innocent for such conceivably would be the situation in the Johnson case. This is true because the Federal Denture Act makes unlawful only the use of instrumentalities of interstate commerce to transport dentures into areas where the dentures were prescribed or manufactured in violation of the laws of the state into which the dentures were transported.

█ It is the intent of Congress, of course, which must be looked to in determining where venue may be laid. The Securities Act of 1933 does have a venue provision for criminal prosecutions, namely, Section 20(b) (15 U.S.C.A. § 77t(b)), the relevant portion of which is set out in the margin.[5]

██ There is, however, also a general venue statute for continuing crimes, namely, 18 U.S.C. § 3237(a).[6] If Section 20(b) of the Securities Act of 1933 were to be held to provide for the exclusive jurisdiction of any criminal prosecution, it might well be argued, as the Government does, that if an indictment charges specific mailings, as Counts I through V do, trial could be held only in those districts wherein the transmittal of the prospectus or security complained of began or was received. I do not believe that Section 20(b) was intended so to restrict the venue. That venue was not intended to be so restricted is shown by the case of United States v. Monjar, D.C. D.Del.1942, 47 F.Supp. 421, at pages 427–428, wherein it was stated:

"This argument postulates the presence of a security or prospectus in every violative act. The readily demonstrable falsity of this postulate explodes the argument. Section 5(a), 15 U.S.C.A. § 77e(a), makes it unlawful to use the mails or interstate commerce to sell unregistered securities through the use of a prospectus 'or otherwise.' It is clear there could be a violation of this section without transmitting either a security or prospectus. Again, Section 23, 15 U.S.C.A. § 77w makes it unlawful to represent that the Commission has approved a security; no transmittal of a prospectus or security is necessary to violate this section Similarly, Section 24, 15 U.S.C.A.

---

4. I am not unaware of the fact that when former 28 U.S.C. § 103 was incorporated in revised Title 18 U.S.C. in 1948 as Section 3237, infra footnote 6, it was amended to "meet the situation created by" [Reviser's Note] United States v. Johnson. However, the amendment does not at all act to restrict but rather to broaden the number of jurisdictions in which a criminal trial may be had in the case of continuing offenses.

5. Injunctions and Prosecution of Offenses

Sec. 20. "(b) * * * The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General who may, in his discretion, institute the necessary criminal proceedings under this title. Any such criminal proceeding may be brought either in the district wherein the transmittal of the prospectus or security complained of begins, or in the district wherein such prospectus or security is received."

6. "§ 3237. Offenses begun in one district and completed in another

"(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

§ 77x, prohibits the making of a false statement in a registration file. Certainly the violation of this section does not depend upon the transmittal of the prospectus or security.

"It was not the intention of Congress that Section 20(b) fix venue for all violations of the act. It merely provides for an auxiliary venue under certain circumstances; and district courts are not divested of their general jurisdiction under 28 U.S.C.A. § 103 [now 18 U.S.C. § 3237]."

Thus, looking to 18 U.S.C. § 3237 it is clear to me that the crimes charged in Counts I through V were begun in Mobile, Alabama, where the books of The Olen Company, Inc. were maintained. If any further connection of the District Court for the Southern District of Alabama with the crimes charged in Counts I through V were considered necessary, such connection can be shown by the fact that the use of some means or instrument of transportation or communication in interstate commerce or the use of the mails was absolutely necessary to communicate the false information complained of from the place of its inception, Mobile, Alabama, to the New York underwriters who sent the confirmations set out in Counts I through V. This communication is sufficient to invoke the jurisdiction of the Southern District of Alabama, the district wherein the crime was commenced under 18 U.S.C. § 3237.

I am not unaware, as the Government has pointed out, of the fact that the Supreme Court has interpreted the Mail Fraud Statute (18 U.S.C. § 1341) to restrict venue thereunder to the districts wherein the mailing, in furtherance of a scheme to defraud, was initiated or consummated. See Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989. Such restriction, however, was under the wording of a statute which itself was re-strictive and presently, of course, under 18 U.S.C. § 3237 a mail fraud can be prosecuted in any district "from, through, or into which such commerce or mail matter moves". The Mail Fraud Statute so restricting venue was originally passed in 1889. I do not ascribe such a restrictive intent to Congress in 1933 when the area of federal control had been extended greatly and was in the process of being even further extended.

It is also true, as argued by the Government, that the "gist" of a mail fraud case is the mailing. This statement, however, is true only in the sense that until a use of the mail occurs, no federal jurisdiction exists. The evil to be combatted, of course, is the fraud and I have no doubt that Congress could constitutionally provide for trial of a mail fraud case in the district where the scheme was hatched even though all mailings took place in another district.

Such speculation is not necessary however, since what is charged here is not a mail fraud but rather violation of the Securities Act of 1933, specifically a "sale" or "offer to sell". This "offer to sell" commences as early as a local press release subsequently communicated in interstate commerce. Securities and Exchange Commission v. Arvida Corporation, D.C.S.D.N.Y.1958, 169 F.Supp. 211. The "sale" continues even though consummated locally with no use of the mails, when the evidence of security ownership is subsequently transmitted across state lines by mail. Schillner v. H. Vaughan Clarke & Co., 2 Cir., 1943, 134 F.2d 875. Since, in the case of Counts I through V, the basic wrongful act giving rise to liability was begun in Mobile, Alabama, those counts can be tried there.

What has been said in connection with Counts I through V is equally applicable to Counts VI and VII except that the venue statute in the Securities Exchange Act of 1934, namely, Section 27 (15 U.S.C.A. § 78aa) [7] certainly can-

7. Jurisdiction of Offenses and Suits Sec. 27. " * * * Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. * * * "

not be argued to be restrictive if, indeed, it does not specifically provide for bringing suit in the District Court for the Southern District of Alabama, since venue may be laid where "any act or transaction constituting the violation occurred". Count VIII is concededly triable in that Court.

 Having determined that venue may be laid in the proposed transferee court, I now turn to the question of whether the second requisite of Rule 21 (b) is met. That requisite is that the transfer be "in the interest of justice". Obviously, consideration of this requisite cannot be completely divorced from the question of venue.[8] United States v. Johnson is apposite to this second requisite since all of the defendants reside in Mobile, Alabama, and did so reside at the time of the alleged commission of the crimes charged. Had the bulk of the charged criminal acts taken place in this district, I would not hesitate in refusing a transfer. Such is not, however, the situation here. The stock issue giving rise to Counts I through V consisted of 100,000 shares. Only 20,000 shares were allotted to a New York underwriter. At least 65,000 shares were allotted to underwriters in Charlotte, North Carolina, Savannah, Georgia, Miami Beach, Florida and Montgomery, Alabama. The underwriting agreement was made with a Charlotte, North Carolina, firm. Thus, there does not exist a situation wherein the center of activities of the charged scheme to defraud was the Southern District of New York.

Were I to consider Counts VI and VII separately, I do not believe I would grant a transfer. This result would follow because allegedly wrongful activity would be centered in this district since the proxies to be obtained would affect a stockholders' meeting in New York and the merger of a corporation which, I assume, has maximal New York contacts. Thus, the defendants would be charged with coming to New York to perpetrate a fraud. The Government, however, has chosen to join all counts in a single indictment so that I will not consider the possibility of severance, especially since proof on all counts will be, to a great extent, the same.

Apart from having family contacts in Mobile, Alabama, it would appear from their affidavits that defendants Olen and Mandeville are presently in financial straits. While attendance at a trial at any place will certainly seriously hamper their earning powers, great additional expense would be entailed in transportation to New York, subsistence there and the hiring of New York counsel. Defendants Childree, Kerlin and Clements, while not apparently presently impecunious, might well become so if forced to neglect their accounting practice for the period of the trial. If the trial were held in Mobile, Alabama, however, they would be enabled, at least to a substantial extent, to keep up their practice by working evenings and weekends.

 Another factor militating in movants' favor is the fact that nearly all of the witnesses to be called by both the Government and the defendants reside at or near Mobile, Alabama. Even though prospective witnesses would have no standing to move for a transfer, their convenience may certainly be considered by me in the exercise of my discretion. The contention of the Government that they will call virtually all of the witnesses defendants will call and make them available to defendants in New York is, therefore, irrelevant. In addition, the character witnesses whom defendants wish to call all reside in or near Mobile, Alabama, and will certainly not be called or made available in New York by the Government. .

 There is, in my view, only one factor which favors the Government, namely, that the United States Attorney's staff in this district otained the in-

---

8. Although in considering the present requisite I am not limited to information contained only in the indictment and bill of particulars, rather, I may and have considered affidavits submitted in support of and in opposition to the motions.

dictment and is familiar with this concededly complex case. I give little weight to this factor, however, since all of the factors impelling me to grant the transfer must have been known to the Government very early in its investigation. With knowledge of these factors it chose to continue the proceedings in this district. Under the circumstances, the Government will not now be heard to complain of what will be duplication of effort by two United States Attorneys.

The motions are granted.