UNITED STATES of America,

v.

David BENJAMIN, et al., Defendants.

Crim. No. 85–0356.

United States District Court,
District of Columbia.

Dec. 20, 1985.

Thomas J. Nolan, Nolan & Parnes, Palo Alto, Cal., for Philip C. and Miriam R. Bourdette.

John L. Williams, Manchester & Williams, San Jose, Cal., for Steven Simon.

Jay W. Powell, Powell & MacGlashan, Visalia, Cal., for Cecelia Jason Dederich.

Robert N. Harris, Los Angeles, Cal., for Elizabeth Missakian.

Mark E. Overland, Overland, Berke, Wesley, Gits, Randolph & Levanas, Los Angeles, Cal., for Sybil Schiff.

William W. Taylor, III, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for Dan Sorkin.

Robert D. Luskin, Onek, Klein & Farr, Washington, D.C., for David R. Benjamin.

William G. Schaffer, Schaffer & Cooper, Washington, D.C., for Philip C. and Miriam Bourdette, Steven Simon, Cecilia Jason Dederich, Sybil Schiff and Elizabeth Missakin.

## MEMORANDUM

OBERDORFER, District Judge.

A twenty-two count indictment returned by a Grand Jury impaneled by this Court charges nine defendants with conspiracy, obstruction of justice and perjury;[1] all of the nine defendants are charged in each count. Seven counts grow out of a dispute between Synanon Foundation, Inc. ("Synanon"), a California organization, and the Internal Revenue Service ("IRS") as to whether Synanon was eligible for exemption from federal income tax under section 501(c)(3) of the Internal Revenue Code. The first count charges a conspiracy to alter or destroy documents and tapes which might support a revocation of Synanon's tax exempt status and a continuing scheme of fraud and obstruction to conceal the destruction of evidence. Two of the federal counts charge that defendants, by their general counsel, Philip Bourdette, made

Joseph E. diGenova, U.S. Atty., Guy L. Goodwin and William C. Brown, Attys., Gen. Litigation & Legal Advice Section, Criminal Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

1. The indictment was filed on October 1, 1985. On October 16, 1985, defendants moved to transfer the case to the United States District Court for the Eastern District of California, Fresno Division. On November 13, 1985, the Court heard extensive oral arguments from counsel on the motion to transfer. Other than the pleadings and arguments, there has been no activity or discovery in the matter.

false statements to IRS agents at a conference at IRS national headquarters in Washington, D.C., to which Synanon had appealed an adverse ruling of the IRS office in California. Four federal counts charge defendants with perjury and obstruction of justice in connection with the suit brought by Synanon against the United States pursuant to a statute which provides for judicial review in the District Court for the District of Columbia of IRS decisions denying tax exemption claims. *See* 26 U.S.C. § 7428. The remaining fifteen counts charge defendants with violation of the District of Columbia perjury laws in connection with a suit brought by Synanon in the Superior Court in a dispute over real estate in the District of Columbia (at issue was whether Synanon was a nonprofit corporation within the meaning of D.C. law).

The matter is presently before the Court on defendants' motion to transfer the case to the District Court for the Eastern District of California, Fresno Division, either by operation of 18 U.S.C. § 3237(b) or Fed. R.Crim.P. 21(b).[2]

The motion to transfer the federal counts invokes 18 U.S.C. § 3237(b) which provides that:

> [W]here an offense is described in section 7203 of the Internal Revenue Code of 1954 ... and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion ... elect to be tried in the district in which he was residing at the time the alleged offense was committed....

Section 7203 of the Internal Revenue Code provides in relevant part:

> Any person ... required under this title or by regulations made under authority thereof to ... keep any records, or supply any information, who wilfully fails to ... keep such records, or supply such information, at the time or times re- quired by law or regulations, shall ... be guilty of a misdemeanor ....

Defendants claim that counts One, Two and Three allege willful failure to keep records or supply information required by tax statutes and regulations and that the "nature and effect"[3] of this conduct are the same as conduct actionable under section 7203, making those counts subject to mandatory transfer under 18 U.S.C. § 3237(b) because the offense is "described" in section 7203.

Defendants further urge that counts Four through Seven charge acts "similar in kind to the counts subject to mandatory transfer" and that "the entire indictment charge[s] acts which principally concerned an attempt to withhold information from the Internal Revenue Service" and would require proof of the same facts. Defendants' Reply Memorandum in Support of Motion to Transfer to Eastern District of California, Fresno Division ("Reply Memorandum") at 6–7 (filed November 5, 1985). Consequently, defendants urge, the case should be transferred as a whole even if certain of the federal counts do not fall within § 3237(b). Defendants also make a special plea with respect to counts Five and Six. These counts charge that defendants endeavored to obstruct justice in the District of Columbia by preparing and signing in California and filing in this Court materially false declarations. Defendants claim that venue for these counts is proper only in the jurisdiction where the allegedly false declarations were prepared and mailed, and that venue does not lie in this district merely because the defendants caused the declarations to be filed here. They rely on *United States v. Swann,* 441 F.2d 1053, 1055 (D.C.Cir.1971), as authority for the proposition that defendants' intention to influence proceedings here does not create venue here.

Finally, defendants ask transfer of the D.C. counts (alleging perjury in Superior

---

**2.** Eight of the nine defendants have joined in the motion; the ninth, Dan C. Garrett, does not oppose the motion.

**3.** Defendants cite *United States v. Kimble,* 186 F.Supp. 616, 618 (S.D.N.Y.1960), and *United States v. Youse,* 387 F.Supp. 132 (E.D.Wis.1975).

Court) as well. Defendants argue that the Eastern District of California would have authority to adjudicate the D.C.Code offenses, and cite the policy of avoiding successive trials on charges that substantially overlap. *See* Defendants' Supplemental Memorandum in Support of Transfer ("Supplemental Memorandum") at 5–8 (filed November 18, 1985).

In general support of their motion, defendants point particularly to the statement in the Senate Report which made section 7203 indictments transferable: Prosecution of offenses described in that section "should be brought as close to the defendant's residence as possible in order to avoid hardship to him, his attorneys and witnesses." S.Rep. No. 1625, 89th Cong., 2d Sess. *reprinted in* [1966] U.S.Code Cong. & Ad.News 3676, at 3681. The defendants also quote the Senate Committee Report which originally recommended enactment of section 3237:

> [T]oo frequently prosecutions are not brought in the defendants' home districts but rather ... a considerable distance from the defendant's home. The cost and inconvenience to the defendant may be substantial, especially in the case of an extended trial. The additional expense to the defendant living away from home, the problem of getting his local attorneys to leave their offices and practices for several days or weeks and the increased cost incurred thereby, the inconvenience to witnesses, these are all factors which the committee believes place a heavy burden upon the defendant which can be better borne by the Government.

S.Rep. No. 1952, 85th Cong., 2d Sess. *reprinted in* [1958] U.S.Code & Ad.News 3261, at 3262 (quoting comments from the House Report). Thus, defendants contend:

> The purpose of section 3237(b) is to entitle a citizen accused of misleading agents of the Internal Revenue Service investigating his compliance with the federal tax laws at a trial to defend these accusations in the district of his residence. That right is not altered because

> ... a citizen is compelled to attend conferences in Washington, D.C., *see* Internal Revenue Manual §§ 4551.2(11) and .3 ("Conferences in Washington"), or because he is compelled by law to file suit in the federal courts in this city. *See* 26 U.S.C. § 7428(a)(2); *Universal Life Church, Inc. v. Internal Revenue Service,* 82–1 USTC ¶ 9390, at p. 84,076 (1981).

Reply Memorandum at 7–8 (footnote omitted).

In the alternative, defendants base their motion on Fed.R.Crim.P. 21(b). That rule authorizes a transfer of a case or any one or more of the counts for the convenience of parties and witnesses, and "in the interest of justice." In support of this alternative, defendants point to the fact that most of the defendants reside in California. Synanon is incorporated and operates there. The alleged documents destruction occurred there. The allegedly false written statements were prepared in California (and Arizona) and transmitted from there to the District of Columbia. Defendants claim that both they and the government will be forced to rely primarily on California witnesses to establish the truth (or falsity) of the allegedly false statements made in hearings at the IRS, Superior Court, and this Court, as well as the materiality of those statements. Alleged acts of violence and other conduct which drew the tax exemption into question occurred in California. The original IRS audit occurred in California and the original decision denying tax exemption was made there. They further claim that the principal witnesses (particularly character witnesses and those who dealt with IRS) and quantities of documentary evidence are in California. Five of the seven lawyers so far appearing for defendants practice in California. Defendants point to the logistical problems and expense which would be involved for defendants and their California counsel if they were required to establish themselves in Washington for a protracted trial, as well as the expense and difficulty involved if they attempted to

commute to their homes and offices in California during the trial.

In opposing these motions, the government emphasizes that the conspiracy count and the particularized counts all essentially charge acts committed in the District of Columbia: obstruction of justice in this Court, false statements and representations at conferences at the IRS national headquarters here in Washington, D.C., and perjury in the Superior Court of the District of Columbia. In the government's view

> [T]he principal matter at issue here is not the existence of a tax evasion scheme arranged and perpetrated primarily in California. Rather, ... the key issue is whether the defendants should be held criminally response for participating in this "gross fraud ... of the most grave and serious proportions" on both federal and local courts of the District of Columbia.

Government's Memorandum in Opposition to Defendants' Motion to Transfer Action to the Eastern District of California, Fresno Division ("Government's Opposition") at 6 (filed October 25, 1985).

In further answer to defendants' reliance on § 3237(b), the government argues that transfer under § 3237 in cases involving tax evasion (26 U.S.C. § 7201), false declarations (26 U.S.C. § 7206(1)), aiding and abetting false returns (26 U.S.C. § 7206(2)), and document destruction (26 U.S.C. § 7206(5)) is only authorized when venue for a prosecution of an offense described in one of those sections is based "solely on a mailing to the Internal Revenue Service." The government notes that

the "mailing requirement" is not satisfied here.[4]

As to transfer under section 3237(b) on the theory that the offenses charged are also "described" in 26 U.S.C. § 7203, the government concedes that under § 3237(b) no requirement that venue be based solely on mailing limits transfer of § 7203 prosecutions. The government argues, however, that, under the terms of § 3237(b), § 7201 or 7206 cases in which venue is based solely on mailing may be transferred "whether or not the offense is also described in another provision of law." The government notes that this broadening clause does not modify § 3237(b)'s reference to § 7203 cases.

The government further argues that section 7203 covers only failure to file a return or supply information required by law, whereas the federal tax counts in this case involve misrepresentations to the IRS. In support of its contention that only failure to file cases brought under § 7203 are transferable under § 3237(b), the government argues that the 3237(b) transfer option was created to address a narrow problem. The government points to the Senate Report on the legislation:

> For purposes of determining where a prosecution [for willful failure to file a tax return] is to occur, present case law holds that the venue is to be in the judicial district in which the return was required to be filed.
>
> . . . .
>
> ... [T]o be sure that the taxpayer has the right to be tried in the district in which he resides, the bill amends present law to provide that he may elect to re-

---

**4.** Section 3237(b) provides in pertinent part:
[W]here venue for prosecution of an offense described in section 7201 or 7206(1), (2), or (5) ... (whether or not the offense is also described in another provision of law) is based solely on a mailing to the Internal Revenue Service, and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion ... elect to be tried in the district in which he was residing at the time the alleged offense was committed ....

Defendants initially appeared to claim that certain of the counts were chargeable under § 7201 or § 7206, thus providing alternative grounds for mandatory § 3237(b) transfer. See Memorandum of Points and Authorities in Support of Motion to Transfer to the Eastern District of California, Fresno Division ("Defendants' Memorandum") at 9 (filed October 16, 1985). Defendants have now apparently abandoned this claim. See Reply Memorandum at 6–7.

move his trial to the judicial district of his residence.

S.Rep. 1625, 89th Cong., 2d Sess, *reprinted in* [1966] U.S.Code Cong. & Ad.News at 3680–81.

Addressing defendants' claim based on Fed.R.Crim.P. 21(b), the government concedes that "[a] motion under Rule 21(b) is addressed to the sound discretion of the Court." Government's Opposition at 15. *See Jones v. Gasch,* 404 F.2d 1231, 1242 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1414, 20 L.Ed. 286 (1968). The government cites a district court's statement in a nontax case that:

> To warrant a transfer from the district where the indictment was properly returned it should appear that a trial would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome ....

*United States v. Baltimore & Ohio RR,* 538 F.Supp. 200, 205 (D.D.C.1982) (quoting *United States v. United States Steel Corp.,* 233 F.Supp. 154, 157 (S.D.N.Y. 1964)).[5] The government points out that the government attorneys and Federal Bureau of Investigation agents who investigated the perjury and related charges and who reside in the District of Columbia would be inconvenienced by a transfer to California, and this Court's authority to transfer the case to the Eastern District of California does not include authority to designate the Fresno Division of that district for the trial. Most important, the government emphasizes:

> Because of the nature of the defendant's alleged conduct, this is a case that is so closely linked to the judicial processes in this district that it should be tried here absent a compelling showing of overriding factors.... It falls properly with-

in the substantial interest of this Court and the public of the District of Columbia to maintain jurisdiction in a case of this type. This is particularly true in view of the fact that the majority of the counts in the indictment charge perjury under the D.C.Code in the Superior Court of the District of Columbia in *Bernstein,* a dispute over a sale of District of Columbia real estate.

Government's Opposition at 19–20. According to the government:

> This is not a case where the defendants are being forced to trial away from their homes because some technical act or legal requirement of the tax code has created venue in this district. Rather, it was in this district that the defendants committed perjury, obstruct[ion] of justice and attempted to perpetrate their fraud on the courts.

*Id.* at 20–21.

In addition, the government strongly disputes defendants' contentions that many documents and witnesses necessary for the trial are in California. The government also downplays the impact of the trial on defendants' businesses and the relative expense of trial in California vis-a-vis the District of Columbia. According to the government, this Court's docket is in better condition to absorb this trial than is that of the District Court for the Eastern District of California. Finally, the government points to the reputation of defendants in California for violence and obstruction of justice, and the risk that a trial there could be complicated by the apprehension of jurors and witnesses about the consequences to them of crossing Synanon. According to the government:

> [T]he real objective of the defendants' motion to transfer this case to Fresno is to be tried in a community where Syna-

---

5. The government also quotes from another nontax case that:

> [O]nly rarely and for good cause should a prosecution be withdrawn by a judicial act from the court in which it is brought .... This is especially true where, as in this case, government counsel has carried it before the Grand Jury. Accordingly, to warrant a trans-

fer the defendant must demonstrate and the Court must be satisfied that the prosecution in the district where the indictment was properly returned will result in a substantial balance of inconvenience to himself.

*United States v. Jones,* 43 F.R.D. 511, 514 (D.D.C. 1967).

non's reputation for violence against and harassment of its enemies is pervasive, and where ... this reputation, along with the proximity to the Synanon facility, will affect witnesses called to testify and could render jurors chosen to try the case susceptible to intimidation.

*Id.* at 28–29. They continue:

In view of the intentional creation of this reputation for violence against and harassment of Synanon's enemies in the very district to which the defendants seek to transfer this case, transfer is not in the interest of justice. Some of the defendants and the organization which they direct are directly responsible for the creation of this reputation for violence. The defendants should not be permitted to capitalize on it by obtaining a transfer to the very location where the Synanon's armed presence and its reputation for violence is strongest.

*Id.* at 33–34.

## II.

Analysis of the issues posed by the defendants' motion is best conducted by considering the proposed transfer of the federal counts before considering the disposition of counts alleging violation of the D.C. Code. In turn, discussion of the federal counts conveniently subdivides best into attention to the defendants' reliance on § 3237(b) before addressing the transferability of the federal counts on authority of Rule 21(b).

The procedure for administrative determination of the tax status of an organization claiming tax exemption and judicial review of that determination is germane to resolution of the pending motion to transfer. The determination to exempt an organization from tax pursuant to § 501(c)(3) or a determination to revoke an outstanding exemption is initially the responsibility of the Director of IRS of the district where the organization files its return. This determination by the Director is reviewable through the IRS hierarchies: the IRS regional office (with geographical jurisdiction roughly parallel to that of a U.S. judicial circuit), and ultimately in the national office in Washington, D.C.

At one time there was no straightforward procedure whereby an organization claiming exemption could obtain judicial review of an administrative decision by IRS to deny or revoke an exemption. To obtain judicial review an organization had to pay the tax which would be due if it were not tax exempt and then sue in a United States District Court (or the then Court of Claims) for a refund. The suit for refund could be brought in the District Court where the organization was domiciled or where it filed tax returns and Claims Court Commissioners took evidence and heard argument on circuit.

In 1976, Congress provided a declaratory judgment remedy to organizations claiming to be erroneously denied tax exemption, 26 U.S.C. § 7428.[6] Under § 7428 it was no longer necessary to pay the tax and sue for refund. The prescribed procedure was to exhaust the administrative process and then sue in the Tax Court of the United States, the Claims Court, or the United States District Court for the District of Columbia. Each of these courts has its office for the filing of pleadings in the District of Columbia. Thus, the only recourse available to any organization disputing denial of its tax exemption (other than paying a tax and suing for its refund) was to exhaust its administrative remedy through the IRS national office, and if unsuccessful to obtain judicial review by filing suit in Washington, D.C. The Tax Court and the Claims Court "ride circuit" so that hearings on a taxpayer's suit to

---

**6.** 26 U.S.C. § 7428 provides in pertinent part that:

In a case of actual controversy involving ... a determination by the Secretary ... with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) ... upon the filing of an appropriate pleading, the United States Tax Court, the United States Claims Court, or the district court of the United States for the District of Columbia may make a declaration with respect to such initial qualification or continuing qualification ....

redress exemption rulings in those courts could be held near the taypayer's residence. But plenary review by a federal district court under 7428 is exclusively in the District of Columbia.

### A.

The government has the better of the argument with respect to automatic transfer pursuant to 18 U.S.C. § 3237(b). Defendants correctly state that, it is not necessary to find that to be transferable the count must charge an enumerated offense or one effected by a mailing. Under the terms of § 3237(b), transfer is authorized for an offense "described" in § 7203 just as transfer is authorized for offenses "described" in §§ 7201 and 7206(1), (2) and (5).[7] Moreover, Congress was prompted to provide defendants with the option of transfer of certain tax prosecutions to the district where they resided when the alleged offense was committed. The reasons which inspired Congress to provide that option in cases (under §§ 7201, 7206) where venue is based solely on mailing pertain as well to this case, in which the alleged crimes were committed in Washington, D.C., far away from plaintiffs' homes *because* the law required their organization to apply here for administrative and judicial relief with regard to a tax issue. Defendants also seem to be correct in their contention that section 7203 is not limited to failure to file tax returns. *See United States v. Stavros*, 597 F.2d 108, 112 (7th Cir.1979).

Despite these persuasive arguments for transfer, defendants' motion must fail—to the extent that it is based on § 3237(b) and the inclusion in the indict-ment of offenses chargeable under § 7203. Although defendants correctly cite the provision of section 7203 which makes it a crime for a person required to supply information to the IRS to fail to do so, a § 7203 prosecution on this theory requires proof that the supply of information was required by law or regulation. Defendants have not thus far demonstrated that any law or regulation affirmatively required the supply of the information. They argue instead that if the supply of information was not required by law or regulation, the alleged misrepresentation about destruction of the information is neither material nor actionable. The materiality of the alleged misstatements, however, is not yet at issue. Defendants' failure thus far to establish that retention of the disputed documents was required by the Internal Revenue Code or by regulation[8] precludes transfer pursuant to § 3237(b) insofar as it pertains to crimes described in section 7203.

### B.

Rule 21(b) is another matter. The language of Rule 21(b) vests considerable discretion in the trial court to determine when a criminal case, or a count in such a case, should be transferred "for the convenience of the parties and witnesses, and in the interests of justice." This Court has "liberally construed [Rule 21(b) ] so as to minimize inconvenience to a defendant." *United States v. Amador Casanas*, 233 F.Supp. 1001, 1003 (D.D.C.1964). The Supreme Court, speaking through Justice Clark, a former Attorney General, has sketched the factors germane to a transfer decision under Rule 21(b) in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243–44, 84

---

**7.** The government does not dispute that courts have found § 3237(b) transfer appropriate where offenses *chargeable* under §§ 7201 or 7206(1), (2), or (5) provided the gravamen of the indictment. *See* Government's Opposition at 10–12.

**8.** Such failure at this stage obviously does not prejudice the government's possible efforts at trial to establish such a duty. Because it is determined that transfer is appropriate under Fed.R.Crim.P. 21(b), *see infra* at II(B), it is not necessary to rest the transfer on § 3237(b) and § 7203. The fact, however, that later in these proceedings the government may well make such proof—thus rendering counts then "chargeable" under § 7203 and subject to mandatory § 3237(b) transfer at defendants' election—would support a decision to transfer the entire case to the Eastern District of California before there has been any substantial activity in the case.

S.Ct. 769, 771, 11 L.Ed.2d 674 (1964); factors include: location of defendants, location of possible witnesses, location of events likely to be in issue, location of documents and records likely to be involved, disruption of defendant's business, expense to the parties, location of counsel, relative accessibility of the place of trial, docket condition of each district and other special elements. *See also United States v. Amador Casanas, supra,* 233 F.Supp. at 1003.

■ In this case, consideration of the *Platt* factors establish that, on balance, the convenience of the parties, if not the witnesses, and the interests of justice require transfer to the Eastern District of California. That conclusion is even more compelling in light of the special element that these federal counts grow out of a federal tax case in California—which tax case ultimately came to the federal district court in the District of Columbia only because Congress designated the District of Columbia as the exclusive forum for actions in federal district court under 26 U.S.C. § 7428.

### C.

■ The so-called *Platt* factors may be considered individually, although judgment ultimately rests upon an overview.

#### 1. *Parties and Lawyers.*

The issue here involves at least two factors which distinguishes this case from the usual one-on-one prosecution:

First, this criminal prosecution grows out of a federal income tax enforcement proceeding in California about the tax status of an organization there. Consequently, the decision as to transfer is informed, if not controlled, by Congress' stated preference that tax prosecutions "should be brought as close to the defendant's residence as possible in order to avoid hardship to him, his attorneys and witnesses." S.Rep. 1625, U.S.Code Cong. & Admin. News 1966, 3681, *supra.*

Second, this will be a protracted trial. The trial does not require the presence of any principal or corporate representatives of the government. However, nine defendants [9] must be in court all day, every day, 3000 miles from their homes, families, businesses and offices. Defendants' initial motion to transfer reported that there are eight counsel for the defendants, five from California, one from Arizona, and two from the District of Columbia. *See* Motion to Transfer Action to the Eastern District of California, Fresno Division (filed October 16, 1985) at 31.

The United States is ubiquitous. The IRS and the Department of Justice are, or should be, "at home," not only in Washington, D.C., but also in Fresno or any other place in California or elsewhere in which a federal court sits. These eight defendants are only "at home" in California (and the ninth apparently has family there). The government is represented by two attorneys from the Department of Justice whose duty and practice is to try cases in any federal court in the United States. If the trial is in Washington, D.C., six defense lawyers must travel; if it is elsewhere, only two government lawyers must travel. (Defendants suggested at oral argument that District of Columbia local counsel for defense will probably withdraw from the case if it is transferred to California.) In any federal district, the government lawyers have a built-in office, complete with local logistical support from parallel local staffs of the U.S. Attorney, IRS and the FBI. Each of these organizations has established telephone and telecopying access to its national office in Washington, D.C., with back-up and supervisory personnel easily available. The Justice Department is, or should be, staffed, so that if one prosecuting team is away from Washington, supervisors and other lawyers can carry on for them in any other matters for which they are responsible. In contrast, five California lawyers and one Arizona lawyer defending California clients in

---

**9.** Eight of the nine defendants reside in California, and one, Sybil Schiff, resides in Florida.

Ms. Schiff has joined in the motion to transfer to California.

Washington, D.C., must establish their own local base or move in with local counsel. There is no indication that any of them belongs to a large firm affording a back-up base which could match that available to the government.

### 2. *Witnesses.*

The government represents (and has filed an *in camera* witness list to confirm its representation) that most of its witnesses reside outside the Eastern District of California. Moreover, the government discounts defendants' need for witnesses within that district, other than character witnesses. In the government's view the testimony of many witnesses proffered by defendants to testify about the disposition (destruction) of documents there and the nature of Synanon's activity will be irrelevant.

The government's showing that many of its witnesses, such as FBI and IRS agents are from Washington, D.C., must, however, be discounted by some of the same considerations which discount the inconvenience which will confront government lawyers required to conduct a protracted trial away from home. The government-employee witnesses, like the government lawyers, have nationwide responsibilities and are equipped to operate away from home with minimal disruption of their official business.[10]

Moreover, the government's argument as to the irrelevance of the documents destruction in California and the nature of Synanon's activities must also be discounted. In this motion proceeding, the govern-ment has made significant reference to colorful evidence of Synanon's acts of violence, obstruction of justice and other aberrational behavior. Indeed, the government's opposition is supported by a 140-page statement of material facts filed in *The Synanon Church v. United States*, C.A. No. 82–2303 (D.D.C.). That statement chronicles a notorious history of Synanon.[11] The temptation upon the prosecution to bring this colorful evidence before the jury in this case will be very powerful. If the defendants have any rebuttal to this kind of evidence, should it become admissible, they are entitled to be prepared for it. The witnesses who would testify for the defense with respect to such matters appear to be largely from California.

### 3. *Location of Events.*

In the context of federal tax enforcement, the focus of this case is in California, where the defendants operated, the IRS audited them, and defendants allegedly obstructed the audit by documents destruction and by misrepresentation. Obviously, critical events occurred at the national office of IRS and in federal court in Washington, D.C. The government correctly emphasizes the affront that this Court suffered from defendants' misrepresentation to it. Nonetheless, those misrepresentation were about events that occurred in California, presumably material to Synanon's tax exemption. Moreover, defendants correctly emphasize that they became involved in federal court in Washington, D.C., solely because ultimate IRS administrative review and judicial review of that decision are, as a matter of law, only avail-

---

10. Nor should the government's concern about witness intimidation be countenanced, particularly as it may be intended to justify a trial in Washington instead of California. The United States and the Court must assume that its FBI and IRS agents can be protected anywhere in the United States. Nor does the government's concern about possible intimidation of jurors justify a 3,000 mile change of venue.

11. The Statement of Material Facts asserts with considerable supporting detail that:

Synanon III, which commenced in 1974, involved the transformation of Synanon into a corporate conglomerate in business to make huge profits for the personal enrichment of Dederich, his family and other members of the Synanon elite. Synanon was also to become a militaristic cult dedicated to violence. It declared "Holy War" on the "ungodly," and threatened, harassed and beat perceived "enemies." Synanon recognized that it was no longer a charitable organization, so it started to call itself a religion in the hope of preserving its tax exempt status.

*The Synanon Church v. United States, supra.* Defendants' Statement of Material Facts Filed in Accordance wtih Local Rule 1–9(h) at 2.

able in Washington, D.C. Therefore, in evaluating the "location of events factor" as informed by the tax enforcement policy articulated by Congress, the tilt is in favor of trial of defendants at the district of their residence where the tax related events occurred, rather than in the District of Columbia, to which defendants repaired only in response to the requirements of the IRS practice and the 1976 provisions for judicial review in this Court.

### 4. *Documents.*

The government has apparently already assembled in the District of Columbia the documents which it will require to make its case. The defendants claim to have voluminous documents in California that they will need here, unless the expense deters them from doing so. The government attorneys, reinforced by the FBI and the IRS, would seem to have a relatively more manageable task if they had to move their assembled documents to California than would the defendants if they needed to collect and transport defense documents to the District of Columbia. Normally, the defense of a complex criminal case can only be finally organized after the prosecution has showed its evidence at trial. It would seem to be more difficult for defendants sitting at trial in Washington to search for, assemble, and transport counterdocuments from California to Washington, D.C., than it would be for the government to assemble rebuttal documents in Washington (or California) and produce them in California. Since the defendants' need for documents is, however, necessarily speculative and susceptible to exaggeration, no great weight is attributable to the documents factor.

### 5. *Disruption of Defendants' Business Activities.*

Defendants cite several 21(b) transfer cases which give considerable weight to

prospective disruption of defendants' businesses by a trial in a distant place. *United States v. Gruberg,* 493 F.Supp. 234, 242 (S.D.N.Y.1979); *United States v. Daewoo Industrial Co., Ltd.,* 591 F.Supp. 157, 163 (D.Or.1984); *United States v. Jessup,* 38 F.R.D. 42, 47, 50 (M.D.Tenn.1965); *United States v. Olen,* 183 F.Supp. 212, 219 (S.D. N.Y.1960); *United States v. Aronoff,* 463 F.Supp. 454, 459 (S.D.N.Y.1978). They also set out in detail, supported by affidavits, the nature of individual defendants' business responsibilities and the extent to which they and their employer would be disrupted by a protracted trial which pins down key officials in Washington.[12] The government retorts that a protracted trial even in California is necessarily disruptive, and it is further noted that defendants could fly home from Washington for weekends. There remains, however, a margin of time and expense which plainly balances the "convenience-to-defendants'-business factor" in favor of the California forum. *See United States v. Olen, supra,* 183 F.Supp. at 219 (transfer granted in part because defendants could maintain their accounting practice at night and on weekends).

It might not be unreasonable, in the abstract, to conclude that interruption of Synanon's "business" would actually serve the public interest and therefore be "in the interests of justice." Defendants have not yet been convicted, however, on the indictment now pending here. If they are a threat to the public peace in California, that threat should be addressed there, and not by a process which removes them 3000 miles from home for judicial review of their organization's tax status and trial for misconduct in the course of that review.[13]

### 6. *Expenses.*

■ Travel and lodging expenses are an obvious factor to be considered, *see United*

---

12. By contrast, no government principal, other than lawyers, would be confined to the courtroom. Moreover, the government's tax apparatus is "in business" nationwide.

13. The Declaration of Independence complained about the British Government "[f]or transporting us beyond the Seas to be tried for pretended offenses." Documents Illustrative of the Formation of the Union, 69th Cong., 1st Sess. at 22, 24, House Dock. 398 (1927).

*States v. Haley,* 504 F.Supp. 1124, 1128–29 (E.D.Pa.1981), albeit not controlling unless unbearable. *See United States v. Baltimore & Ohio RR Co.,* 538 F.Supp. 200, 205 (D.D.C.1982). It is obvious that the government and, for ought that appears, the defendants have ample means to participate in a trial in either Washington or California. The cost of transporting and maintaining witnesses at either place is difficult even to estimate on the basis of the available record. Nonetheless, it is obvious that the nine defendants would incur substantially more cost transporting and maintaining themselves, and six lawyers (plus staff) in Washington for a protracted trial than the government would incur if it had to maintain two lawyers and appropriate FBI and IRS support personnel in California. Defendants also assert that they would incur several hundred dollars in airfare each time one or more of them or their California lawyers traveled home and back during the trial for business or family reasons. It is questionable whether the government would do the same. For what it is worth, the expenses factor seems also to favor transfer.

### 7. *Location of Counsel.*

Six defendants are represented by California counsel, several of whom plausibly claim to have a long time attorney-client relationship and therefore to be familiar in some depth with the affairs of Synanon and the facts of this case. Defendants' two Washington counsel purport to be less familiar. Moreover, if what the government says about Synanon is true, defendants could have difficulty obtaining counsel with the client rapport of their present California lawyers. Obviously the District of Columbia would be a more convenient forum for government counsel who work and live here. Nonetheless, as indicated, the inconvenience to six outweighs the inconvenience of two.

### 8. *Length of Trial and Docket Congestion.*

While a congested docket is a factor to be considered, the Speedy Trial Act[14] assumes that either this Court or the Eastern District of California would rearrange its docket to accommodate this significant case, even if other matters were delayed. The statistics proffered by the parties fail to demonstrate that this trial would impose undue strain on either district. Although defendants urge transfer to the Fresno Division of the Eastern District of California, it is beyond the power of this Court to designate the division to which the case will be assigned. Assignment of the case within that district is a matter for decision there.

### 9. *Special Considerations.*

There are two other factors unique in this case: The government invokes "the rights of the government as well as the rights of the public to a trial in a venue free from the taint of Synanon's pervasive reputation for violence against and harassment of those it perceives to be its enemies, including jurors, and where witnesses will be less subject to intimidation." Government's Opposition at 28. Defendants contend, of course, that the government's assertions are unfounded. More important, however, it ill behooves representatives of the United States to concede that it cannot enforce federal law or prosecute flagrant federal crimes in any district in the United States. *See, e.g. United States v. Barnett,* 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964).

This conclusion is confirmed by the other special consideration: the federal counts here partake of a tax prosecution. The Congress has indicated a strong preference for the trial of such cases at the defendant's home. Where, as here, nine defendants were actually or constructively in court in Washington in connection with their organization's tax case solely because

---

**14.** Defendants have filed statements waiving their rights to a speedy trial under 18 U.S.C. § 3161(a) and (c)(1).

the law and IRS practice required them to come here to get relief, it is, under all of the circumstances, "in the interests of justice" to transfer the federal counts to the Eastern District of California.

### III.

Having determined to transfer the federal counts to the Eastern District of California, the disposition of counts Eight through Twenty-two remains for consideration. All of these counts charge violation of the D.C. Code in the course of a proceeding in D.C. Superior Court relating to real estate situated in the District of Columbia. Synanon sought and sued in Superior Court to establish special status for its D.C. real estate interest on the theory that Synanon was a nonprofit corporation. Counts Eight through Twenty-two charge perjury and fraud on the Superior Court in the course of this real estate related litigation. In this criminal case the government joined these D.C. counts with the federal counts on the authority of D.C.Code § 11–502(3). That section confers jurisdiction on this Federal District Court over

> [a]ny offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense.

Our Court of Appeals has clarified in discussing joinder of counts under § 11–502(3) that such joinder is appropriate "only if all the offenses charged were part of 'the same series of acts or transactions.'" *United States v. Jackson,* 562 F.2d 789, 794 (D.C.Cir.1977). The government here apparently justifies joinder of the D.C. and federal counts principally on the ground that the defendants made the allegedly false statements in the D.C. proceeding in a continuing attempt to deny or cover up the same alleged acts of violence and documents destruction that defendants allegedly sought to deny or cover up in the IRS administrative proceedings and in the later civil proceedings in this Court. These arguments give color to defendants' contentions that the federal counts and the

District of Columbia counts have a common origin—Synanon's alleged efforts in California to conceal evidence which might threaten its non-profit, tax-exempt status and the tax controversy which arose in California. Moreover, in any event, proof (or disproof) of the falsity and the materiality of the statements should rely upon witnesses and documents the same or similar as would be relied upon with respect to the federal counts. Indeed, the federal court decision in *The Synanon Church v. United States, supra,* was based in substantial part upon the collateral estoppel effect that the federal court gave to the Superior Court decision. Accordingly, most of the arguments favoring transfer of the federal counts similarly favor transfer of the D.C. counts.

If the federal counts *alone* were transferred, recent decisions of our Court of Appeals indicate that the D.C. counts should be dismissed by this Court, leaving the government as one option to refile the D.C. counts in Superior Court. The Court of Appeals has stated that:

> the federal court must dismiss a criminal prosecution when federal charges have faded from the case prior to trial, leaving only District of Columbia offenses for adjudication, unless the court determines, in its discretion, that retention of the case is warranted by remaining matters of legitimate federal concern.

*United States v. Kember,* 685 F.2d 451, 454 (D.C.Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982) (footnote omitted). Here, absent the federal counts, no tangible federal interest would remain to justify this Court's retention of the local counts. A principal reason advanced by the government for trying the D.C. counts in this district are that the alleged perjuries were affronts to the D.C. Superior Court, and should be vindicated in this district. Principles governing division of responsibility between the D.C. Superior Court and this federal court argue that, even if vindication of a court's prestige is a legitimate federal concern, the D.C. Superior Court is the preferred forum for the vindication of

its prestige. For "Congress has determined that D.C. offenses should generally be tried in the D.C. Courts." *Jackson, supra,* 562 F.2d at 797.

There is also another option. The parties appear to agree that the Eastern District of California should not lack jurisdiction to try the D.C. counts together with the federal counts. *See* Defendant's Supplemental Memorandum at 4–8; Government's Response to Defendants' Memorandum in Support of Motion to Transfer (filed November 22, 1985) at 1.[15] There is no reason why the federal court in the Eastern District of California cannot vindicate the prestige of other courts quite adequately, and perhaps, more even-handedly than the court that was affronted.

Cases cited by the parties support defendants' claim (in which the government apparently accedes) that the federal district court in the Eastern District of California may entertain the D.C. counts. *See United States v. Ford,* 627 F.2d 807 (7th Cir.), *cert. denied,* 449 U.S. 923, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980) (sustaining the jurisdiction of a federal court in Indiana to impose sentence, after a Fed.R.Crim.P. 20 transfer, upon a defendant who pleaded guilty to three D.C.Code counts of arson); *United States v. Perez,* 488 F.2d 1057 (4th Cir. 1974) (sustaining the jurisdiction of the federal court in the Eastern District of Virginia to convict defendant on a charge of assault upon a D.C. correctional officer in violation of the D.C.Code). These courts persuasively reasoned, based upon an examination of the legislative history, that D.C.Code § 11–502(3) was intended to address the narrow problem of the division of labor between the local courts and federal court in the District of Columbia. *See Ford, supra,* 627 F.2d at 811–12; *Perez, supra,* 488 F.2d at 1057–58. Consequently, that provision has no effect upon the federal district courts in other jurisdictions, which are empowered under 18 U.S.C.

§ 3231 to try "all offenses against the laws of the United States." *See Perez, supra,* 488 F.2d at 1059; *see also United States v. Kember,* 648 F.2d 1354, 1358 n. 3 (D.C.Cir. 1980). "Section 3231 was not expressly repealed by the Court Reorganization Act [footnote omitted], and we do not think that the Act had that implied effect." *Perez, supra,* 488 F.2d at 1059.

More important, there is an obvious judicial economy to be achieved by transferring the D.C. counts, together with the federal counts, to the Eastern District of California (rather than severing the counts and dismissing them). In light of the foregoing, the Rule 21(b) balancing of interests and convenience to the parties compels the conclusion that transfer of the D.C. counts—like the federal counts—is in the interest of justice. Accordingly, the accompanying order will transfer the D.C. Code counts, together with the federal counts, to the United States District Court for the Eastern District of California.

---

**15.** The government expressed its concern that the arguments in favor of the exercise of jurisdiction by the Eastern District of California over the D.C. counts *might* not ultimately prevail. It goes without saying that the transfer of the

entire case herein effected is without prejudice to the government's right to refile the D.C. counts in the Superior Court in the District of Columbia and then dismiss them in the transferred proceedings in California.